McLEOD v. STATE BOARD OF CANVASSERS.

1. UNITED STATES—CONGRESS—HOUSE OF REPRESENTATIVES—FINAL DETERMINATION AS TO MEMBERSHIP.

Neither the State board of canvassers nor the State Supreme Court can settle the issue as to who was elected as member of house of representatives in congress since final determination as to membership therein rests entirely within such house (U. S. Const. art. 1, § 5; 1 Comp. Laws 1929, §§ 3182, 3186–3188).

2. COURTS—SUPREME COURT—BOARD OF STATE CANVASSERS—MANDAMUS.

The board of State canvassers is a State agency with duties to perform in accordance with State statutes and if it refuses to certify an election where it was the clear legal duty to do so, the Supreme Court would have jurisdiction to issue mandamus commanding performance (1 Comp. Laws 1929, §§ 3182, 3186–3188).

3. Same—Supreme Court—State Agencies—Mandamus.

The Supreme Court has jurisdiction to issue a writ of mandamus commanding performance of a clear legal duty by a State agency.

4. Mandamus—Adequacy of Other Legal Remedy—Public Offi-
cers.

Mandamus will not lie to compel a public officer to perform a duty dependent upon disputed and doubtful facts but is designed to enforce a plain, positive duty upon the relation of one who has a clear legal right to have it performed, and when there is no other adequate legal remedy.

5. Same—Discretionary Nature of Writ.

The writ of mandamus is a discretionary writ and should not issue unless there is a clear legal duty on the part of the defendant, and a clear legal right in plaintiff to the discharge of that duty.

6. Elections—Board of Canvassers—Duties.

In the absence of a recount, the legal duty imposed upon the board of canvassers is purely ministerial (1 Comp. Laws 1929, §§ 3182, 3186–3188).

7. Same—Board of State Canvassers—Returns—Certificates.

It is the clear legal duty of the board of State canvassers to certify the result of an election as shown by the returns thereof made to it (1 Comp. Laws 1929, §§ 3182, 3186–3188).

8. Same—Constitutional Law—Statutes—Members of Legisla-
tive Bodies.

Where constitutional or statutory provisions make a legislative body the sole judge of the election and qualifications of its own members, the final decision rests in such body, and courts cannot interfere.

9. Mandamus—Board of State Canvassers—Election of Con-
gressman.

Writ of mandamus will not issue from Supreme Court to compel board of State canvassers to declare election of congressman void or to remove votes of certain precincts from the return on the ground of mistakes and irregularities in the election where no recount was sought, in view of the fact that the house of representatives in congress, and not the board, had right to make final determination as to who is entitled to membership therein (U. S. Const. art. 1, § 5; 1 Comp. Laws 1929, §§ 3182, 3186–3188).

10. Costs—Mandamus—Election of Congressman.
> No costs are allowed in mandamus proceeding to compel board
> of State canvassers to declare election of congressman void
> or to remove votes of certain precincts from return.

Mandamus by Clarence J. McLeod to compel State Board of Canvassers to remove votes of certain precincts from returns made by Wayne County Board of Canvassers, and to return plaintiff as elected to congress; or, in the alternative, to declare the election in which plaintiff was a candidate for congress null and void. Submitted December 22, 1942. (Calendar No. 42,233.) Writ denied December 30, 1942.

*David H. Crowley* and *Arthur E. Fixel* (*George E. Brand,* of counsel), for plaintiff.

*Herbert J. Rushton,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for defendant State Board of Canvassers.

*Stanley E. Beattie,* for defendant George D. O'-Brien.

Boyles, J. Plaintiff, Clarence J. McLeod, and one George D. O'Brien were candidates for representative in congress from the 13th congressional district (in Wayne county), at the general election held in said district November 3, 1942. The Wayne county board of county canvassers, after canvassing the returns from the several election precincts in said district, certified to the board of State canvassers that O'Brien had received a plurality of 1,509 votes. Before the State board had canvassed the returns from this district McLeod filed a petition in this court alleging irregularities in 18 precincts of said district, and asking that a writ of mandamus be issued commanding the board of State canvassers to

"remove the votes of said 18 precincts from the return on said congressional election," and "to return plaintiff as the elected congressman for the 13th congressional district of Michigan." By amendment to his petition, plaintiff asks that the board of State canvassers be commanded to declare the election held November 3d in said district for representative in Congress null and void, or in the alternative to remove the votes for representative in congress of "said 16 precincts" from the return. On filing the petition, an order to show cause was issued and the board of State canvassers directed to refrain from certifying the election until further order.

In support of his petition, plaintiff has filed a number of affidavits and unsworn statements to the effect that at certain times during the election the ballots furnished in 16 precincts in said district did not contain the name of any candidate for representative in Congress, claimed by plaintiff to affect the right to vote of at least 2,500 electors, and that for this reason the board of State canvassers should declare the election void, or in any event should exclude these precincts entirely, in certifying the result of the election. The defendants, answering the petition, deny the truth of these claims, and by affidavit of Oakley E. Distin, director of elections of the city of Detroit, show that the failure to furnish ballots with the names of the candidates for representative in Congress occurred in only four precincts, affecting the votes of only 113 electors, whereby such failure could not affect the result as certified to by the Wayne county board of canvassers.

Defendant O'Brien appears specially and challenges the jurisdiction of the court. We agree with his contention that the final determination as to who

is entitled to the office rests solely and entirely with the house of representatives in congress. U. S. Const. art. 1, § 5. Neither the board of State canvassers nor this court can settle that issue. This court cannot decide any contest over a congressional election so as to bind the house of representatives to accept the result. The board of State canvassers is without the power to declare the election void. The duties and powers of the board of State canvassers are defined and circumscribed by statute. The board examines the statements of votes as sent to the secretary of State and certifies the whole number of votes given, the names of the persons to whom the votes are given, and the number of votes received by each (1 Comp. Laws 1929, § 3186 [Stat. Ann. § 6.475]); determines therefrom the result of the election, including representatives in congress (1 Comp. Laws 1929, § 3182 [Stat. Ann. § 6.471]); determines what persons have been duly elected by the greatest number of votes and certifies the same to the secretary of State (1 Comp. Laws 1929, § 3187 [Stat. Ann. § 6.476]). The secretary of State delivers to each person thus declared elected a certificate of his election (1 Comp. Laws 1929, § 3188 [Stat. Ann. § 6.477]). Our statute law also contains provisions for a recount of votes by the board of State canvassers where fraud or mistake is claimed.* However, without regard as to whether the State board can order a recount of votes cast for representative in Congress, plaintiff expressly disavows any claim that a recount is sought.

The board of State canvassers is a State agency with duties to perform in accordance with State

* See 1 Comp. Laws 1929, § 3228 *et seq.*, as last amended by Act No. 67, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3228 *et seq.*, Stat. Ann. 1942 Cum. Supp. § 6.540 *et seq.*).—Reporter.

statute law and conceivably there might be circumstances under which the State board might arbitrarily refuse to certify an election where it was the clear legal duty of the State board so to do. This court has jurisdiction to issue a writ of mandamus commanding performance of a clear legal duty by a State agency.

Writ of mandamus will issue to compel public officers and tribunals to perform their duties, when right is clear and specific. *National Bank of Detroit* v. *State Land Office Board,* 300 Mich. 240.

Writ of mandamus lies only to enforce performance of clear legal right or ministerial duty. *Home Insulation Co.* v. *State Board of Tax Administration,* 298 Mich. 657.

The primary purpose of the writ of mandamus is to enforce duties created by law. *Waterman-Waterbury Co.* v. *School District No. 4,* 183 Mich. 168.

Mandamus will not lie to compel a public officer to perform a duty dependent upon disputed and doubtful facts but is designed to enforce a plain, positive duty upon the relation of one who has a clear legal right to have it performed, and when there is no other adequate legal remedy. *Toan* v. *McGinn,* 271 Mich. 28.

The writ of mandamus is a discretionary writ and should not issue unless there is a clear legal duty on the part of the defendant, and a clear legal right in plaintiff to the discharge of that duty. *Taylor* v. *Isabella Circuit Judge,* 209 Mich. 97; *Smith* v. *Wagner,* 234 Mich. 428; *Miller* v. *City of Detroit,* 250 Mich. 633; *Toan* v. *McGinn, supra.*

Mandamus issues only to compel the recognition of a clear legal right or the performance of a legal duty; it does not issue so long as the right or the

duty is disputed or doubtful. *Post* v. *Sparta Township Board,* 63 Mich. 323; *Peck* v. *Kent County Supervisors,* 47 Mich. 477.

Precedent for the conclusion that we have jurisdiction to compel a board of canvassers to canvass the votes for the office of representative in congress, and report the result to the secretary of State, is found in *Belknap* v. *Ionia County Board of Canvassers,* 94 Mich. 516, where the writ was granted. We note that in that case the board was directed to accept the original returns and certify accordingly, contrary to the result reached by a recount. Also, in that case an issue of fact was raised as to the legality of an election for representative in congress. The opinion states:

"The house of representatives is made the judge of the election and qualifications of its own members, and it is now well settled that Act No. 208, Pub. Acts 1887 (3 How. Stat. § 234a), under which the recount was had, has no application to such a case. * * *

"A determination of the essential facts in this controversy must depend upon a re-examination by the proper tribunal of the original ballots."

A similar precedent for issuing the writ is found in *Dingeman* v. *State Board of Canvassers,* 198 Mich. 135, where it was held that it is a ministerial duty of the board of State canvassers to canvass the returns and issue a certificate of election. Writ of mandamus was granted to compel the board to refrain from recounting the ballots in an election for circuit judge. Under the then provisions of the State Constitution * the legislature in joint convention had the power of finally determining who was elected to the office of circuit judge. The opinion concludes:

* Mich. Const. 1908, art. 16, § 4.—Reporter.

"Other cases might be cited, but these are sufficient to demonstrate the rule adopted by this court. Running through all these cases is the rule, to my mind clear and distinct, that wherever by the organic law, whether Federal, State, or municipal, a tribunal is created to finally determine the right to an office, that tribunal is exclusive, and there, and there only, may the right to the office be tested. By the organic law of this State the legislature, sitting in joint convention, is made such tribunal as to the office here involved. By that tribunal, and by that tribunal alone, may the ballots cast for the office of circuit judge be recounted, and the contest for this important office be decided."

In the absence of a recount, the legal duty imposed upon the board of canvassers is purely ministerial. In *McQuade* v. *Furgason*, 91 Mich. 438, it is said:

"If the statements made in the answers of the respondents and the affidavits accompanying them are true, the election law of this State was most grossly violated. But the return by a majority of the board was made, and it is the settled law of this State that canvassing boards are bound by the return, and cannot go behind it, especially for the purpose of determining frauds in the election. Their duties are purely ministerial and clerical. They must be governed by the return. *Coll* v. *Detroit Board of Canvassers*, 83 Mich. 367; *Roemer* v. *Detroit Board of Canvassers*, 90 Mich. 27.

"These affidavits are *ex parte,* and cannot be considered upon this hearing."

It is the clear legal duty of the board of State canvassers to certify the result of the election as shown by the returns. The petition and return in the case at bar raise issues of fact as to how many precincts were affected, how many voters were deprived of the right to vote, and whether the result

would have been different if ballots had been furnished. McLeod's claims are squarely disputed by O'Brien. On the face of the returns as canvassed, O'Brien was elected by 1,509 plurality. Whether enough more votes would have been cast for McLeod than for O'Brien to overcome this lead, by the disputed number who did not vote for this office, is a matter of pure speculation. McLeod claims that 2,500 or more votes were affected by the claimed illegality. With O'Brien's plurality of 1,509 votes as certified by the county board of canvassers, a simple computation shows that out of 2,500 more votes, McLeod would have had to receive over 2,000, and O'Brien less than 500, to have changed the result. The director of elections shows by affidavit that only four precincts were without ballots, affecting only 113 votes. Plaintiff asks that we command the board of State canvassers to declare the election void, or to throw out the vote of 16 or more precincts. This would result in disfranchising approximately 5,000 electors who voted in the 16 precincts now referred to. Assuming that the State board might be directed to take testimony, or that this court should (as suggested by oral argument and supplemental brief) take testimony as to the disputed facts, to do so would not determine the result of the election. The final decision rests with the house of representatives in congress. We see no desirable result to be accomplished by taking testimony comparable to the delay in representation in congress from the 13th district for an indefinite period of time. United States statutes provide an adequate method for contesting an election to the house of representatives and for taking testimony before a congressional committee.

Plaintiff relies on *People, ex rel. Brown,* v. *Board of Supervisors,* 216 N. Y. 732 (110 N. E. 776). As

we have pointed out, we are in accord with plaintiff's claim to the extent that this court has jurisdiction, and may issue the writ on a proper showing of a clear legal duty. Plaintiff fails to establish that it is the clear legal duty of the defendant board to perform any part of the duties that plaintiff asks this court to command.

The weight of authority in other jurisdictions adheres to the rule of law that where constitutional or statutory provisions make a legislative body the sole judge of the election and qualifications of its own members, the final decision rests in such body, and courts cannot interfere. *Williams* v. *Maas,* 198 Minn. 516 (270 N. W. 586); *Smith* v. *Polk,* 135 Ohio St. 70 (19 N. E. [2d] 281); *Burchell* v. *State Board of Election Commissioners,* 252 Ky. 823 (68 S. W. [2d] 427); *State, ex rel. McDill,* v. *State Canvassers,* 36 Wis. 498. The same rule obtains in this State. As to representative in congress, see *Belknap* v. *Ionia County Board of Canvassers, supra;* as to members of a common council under a city charter, *People* v. *Harshaw,* 60 Mich. 200 (1 Am. St. Rep. 498); as to members of the State legislature, *Auditor General* v. *Menominee County Supervisors,* 89 Mich. 552.

We are not unmindful of plaintiff's claim that there were mistakes and irregularities in the election in this district. As to that, while plaintiff disclaims any demand that the State board conduct a recount, the allegations in the petition, and plaintiff's supplemental brief, both point to issues of fact to be determined only by a recount. The petition alleges the result would be changed if illegal votes were excluded, that illegal votes were cast, that ballots were not tallied or returned, that the system of numbering, initialing and tallying was destroyed, that a certain number of tally books were

locked up in ballot boxes, "with the result that * * * the votes therein tallied cannot be ascertained unless and until a recount is had as provided by the statute."

The issue before us is whether plaintiff has established a clear legal duty that we should command the board of State canvassers to perform. We find none. An order may be entered setting aside the stay order heretofore directed to the board, and the writ is denied. No costs awarded.

CHANDLER, C. J., and NORTH, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.