PER CURIAM.
Plaintiff, Jeffrey Dean LaCaze, filed this suit against Perry M. Johnson, individually and as Parish Custodian of Voting Machines in and for the Parish of East Baton Rouge, and the East Baton Rouge Parish Board of Supervisors of Elections and its members, seeking a preliminary injunction to enjoin the proper officials from counting, canvassing, totaling, recording, certifying and promulgating any vote cast on voting machine No. 13067 used in Ward 1, Precinct 46-B, Parish of East Baton Rouge, in the congressional election held on November 5, 1974. The defendants are state and parish officials charged with the duties of canvassing, tabulating, certifying, totaling and promulgating the results of the congressional election on said date between plaintiff and W. Henson Moore, also made defendant herein.
The petition alleges that said voting machine malfunctioned in that it did not record all of the votes cast in said election and that had such votes been recorded plaintiff would have won the election. The foregoing premise considered, plaintiff then sought, through the use of injunctive process to restrain the above officials from canvassing, totaling, tabulating, recording, certifying and promulgating the results of said election until an evidentiary hearing was held to have the court permanently and finally prohibit the defendants from including in any tabulation total the votes cast on said voting machine, or, in the alternative, to have an evidentiary hearing in order to ascertain, in a form and manner to be prescribed by the court, the correct number of votes cast for the parties in said precinct.
Plaintiff also alleges that under the provisions of LSA-R.S. 18:1076 absentee and military ballots cast in every primary and general election shall be counted by the commissioners of election and their validity ascertained “[a]t the close of regular balloting and at the close of the polls” and that thereafter, as prescribed in said statute, such ballots “shall be placed in the voting machine with the other election paraphernalia.” Considering the mandatory nature of the foregoing statutory provisions, plaintiff alleges that a gross irregularity was committed by the commissioners of election at various voting precincts in that the absentee and military ballots were not placed in any of the voting machines used at said precincts and were not contained in said voting machines when the seals were broken thereon on November 8, 1974.
The relief sought by plaintiff because of the foregoing irregularities is to have the military and absentee ballots in these precincts excluded from the vote count by the defendant officials.
Further, in connection with the relief sought by plaintiff, he obtained from the trial judge a temporary restraining order prohibiting the said officials from counting, canvassing, totaling, tabulating, recording, certifying and promulgating any vote cast on the voting machine in said precinct or any absentee or military ballot for the reasons set forth hereinabove. The temporary restraining order was to remain in effect until November 18, 1974, the date *143 on which the trial judge fixed a hearing on the rule for the preliminary injunction.
From the order granting plaintiff a temporary restraining order, the defendant, W. Henson Moore, applied to this Court for writs of certiorari, prohibition and manda-müs. He contends that LSA-R.S. 18:1193, the statutory provision which establishes the authority and powers of the Parish Custodian of Voting Machines and the Board of Supervisors of Elections, requires that the Parish Custodian “shall immediately transcribe the totals * * * and shall record the number” of votes for each candidate in a precinct, as they appear on the machines, upon opening of the voting machines. We note that he is likewise mandated to record the number of absentee and military votes cast for each candidate, which were required to be placed in each machine.
By the terms of the statute, the foregoing count shall become legal evidence of the number of votes cast for each candidate in said election, and accepted as such in any contest suit which may arise.
It is relator’s contention that the temporary restraining order signed by the trial judge clearly interferes with ministerial duties of such officials which are mandatory under the law and cannot be interfered with by judicial process.
Related to this argument is plaintiff’s contention that the temporary restraining order of the court interferes with the orderly election process which requires that the said election officials promulgate the results in accordance with the mandate of the statute, ^nd the order, therefore, prevents.the certification of a winner of the contest, which is contemplated by the statute before an election contest may be entertained by the courts.
It is on this basis that we issued the writ in order to determine the validity of the proceeding in the trial court.
We agree that the temporary restraining order interferes with the mandatory duty of the parish custodian to promulgate the results of the election in accordance with positive law. This conclusion is based on our interpretation of LSA-R.S. 18:1193. That statutory provision, establishes the authority and powers of the Parish Custodian of Voting Machines and the Board of Supervisors of Elections with respect to the tabulation and certification of election returns. In accordance with the provisions of that statute, all voting machines “shall remain locked and sealed until the third day after the use thereof” in a general election unless the machines are ordered to be opened and the seals broken sooner, by and on the authority of an order of a court of competent jurisdiction. No order was issued by any court, and since there was no contrary order by the Chairman of the Board of Supervisors of Elections, the parish custodian was then directed by the statute to break the seals and open the machines.
Under subsection (B) of said statute, the custodian was directed to immediately transcribe the totals for each candidate as they appeared on the machine and to record the number of absentee and military votes cast for each candidate. The totals so transcribed by him "shall become legal evidence of the number of votes cast for each candidate” in the election and be "accepted as such in any contest suit which may arise.” (Emphasis supplied)
The foregoing statutory provisions considered, we are of the opinion that they prescribe a mandatory duty upon the parish custodian as above set forth and further contemplate that whatever totals are transcribed by him shall be the subject of a judicial proceeding concerning the validity thereof.
R.S. 18:1193(C) provides that the total number of votes cast for each candidate in any general election shall be the number shown in the totals transcribed by the parish custodian, in accordance with subsec *144 tion (B), unless a court of competent jurisdiction shall finally determine to the contrary. The totals so transcribed, according to the statute, shall be legal evidence of the number of votes cast for each candidate in any judicial proceeding contesting the results of an election.
From the foregoing, we conclude that the results of the election must first be obtained under and by virtue of the mandatory duty imposed on the parish custodian to transcribe them and that the validity of such results may thereafter be the subject of judicial inquiry in a proceeding contesting the results of the election.
We are of the opinion that the mandatory duty of the parish custodian may not be interfered with by judicial intervention until after the parish custodian has transcribed the vote, for otherwise such votes would not and could not be legal evidence of the number of votes cast for any candidate, nor could they be the subject of any judicial proceeding to contest the results of an election. Stated otherwise, if a candidate is given the right to contest the results of an election, it cannot be done until the votes are counted.
To be read in connection with LSA-R.S. 18:1193 is the provision contained in LSA-R.S. 18:1251 under Chapter 6 of the Election Law entitled “Contests.” That provision, in part, provides that a candidate for a parish, district or municipal office and certain enumerated state offices, who claims to have been elected to office and who intends to contest the election, shall, within thirty days after the promulgation of the result[1] of the election, file in the district court for the parish or the district in which the election was held a petition setting forth the facts on which he intends to contest the election.
A history of this statutory provision[2] reveals that it only applied to general election contests for those offices enumerated therein, and for the reasons hereinafter set forth does not apply to an election contest in a general election for the congressional office here sought.
While we have emphasized those portions of R.S. 18:1193 and R.S. 18:1251 which speak of a “contest suit,” “judicial proceeding” and “court of competent jurisdiction,” we must conclude that these portions are not applicable in cases which involve a general election to select a member to the United States Congress. To construe them otherwise would be in direct contravention of Article 1, Section 5 of the Constitution of the United States, which reads as follows:
“Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members, and a Majority of each shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.”
In Hartke v. Roudebush, 321 F.Supp. 1370 (1970), the United States for the Sec *145 ond District of Indiana, in addressing itself to an interpretation of Article 1, Section 5 of the United States Constitution as it related to a request for a recount of the returns in an election for the United States Senate expressed what we find to be an accurate statement of the law:
“Another ground for dismissal urged by the defendant Roudebush is that this court lacks jurisdiction because exclusive jurisdiction to determine the effect of the recount proceedings commenced by him is in the United States Senate by virtue of Article 1, Section 5 of the Constitution of the United States, which provides ‘Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members. * * * ’ But a right claimed under the same Constitutional provision — the right to have the returns of the November 3 election judged by the Senate and not piecemeal by various commissions appointed by various state courts — is the very right which plaintiff asserts is being violated by the defendant Roudebush’s state court actions. Regardless of the position taken, all parties agree as to the supremacy of the Senate itself to make the final determination as to the winner of the recent election. Reed v. County Commissioners, 277 U.S. 376, 48 S.Ct. 531, 72 L.Ed. 924; Barry v. United States ex rel. Cunningham, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867.
“The great weight of authority supports plaintiff’s position that court proceedings for recount or contest with regard to an election for representative in the national House of Representatives or for United States Senator are unconstitutional, as in conflict with Article 1, Section 5, whether brought in state or federal court. State ex rel. Fleming v. Crawford, 1891, 28 Fla. 441, 10 So. 118; Burchell v. State Board of Election Commissioners, 1934, 252 Ky. 823, 68 S.W.2d 427; Opinion of the Justices, 1956, 152 Me. 212, 142 A.2d 532; Belknap v. Board of Canvassers, 1893, 94 Mich. 516, 54 N.W. 376; McLeod v. Kelly, 1942, 304 Mich. 120, 7 N.W.2d 240; State ex rel. 25 Voters v. Selvig, 1927, 170 Minn. 406, 212 N.W. 604; Odegard v. Olson, 1963, 264 Minn. 439, 119 N.W.2d 717; State ex rel. McCue v. Blaisdell, 1908, 18 N.D. 55, 118 N.W. 141; Laxalt v. Cannon, 1964, 80 Nev. 588, 397 P.2d 466; Opinion of the Justices, 1921, 80 N.H. 595, 113 A. 293; Smith v. Polk, 1939, 135 Ohio St. 70, 19 N.E.2d 281; Sutherland v. Miller, 1917, 79 W.Va. 796, 91 S.E. 993; State ex rel. Wettengel v. Zimmerman, 1946, 249 Wis. 237, 24 N.W.2d 504; Keogh v. Horner, 1934, S.D. Ill., 8 F.Supp. 933; Peterson v. Sears et al., 1964, N.D.Iowa, 238 F.Supp. 12.
“An equally strong body of authority supports the same rule with regard to the lack of jurisdiction in the courts to countenance suits for recount or contest with regard to elections of members of the State legislatures. The reasoning is identical and is predicated on provisions of the various state constitutions which copy Article 1, Section 5 of the Constitution of the United States either verbatim or in substance. * * * ”
For these reasons the recount process was enjoined. The matter then went to the United States Supreme Court.
When the issue was presented to the United States Supreme Court in Roudebush v. Hartke, 405 U.S. 15, 92 S.Ct. 804, 31 L.Ed.2d 1 (1972), in a 5-2 decision, with two justices taking no part, Mr. Justice Stewart speaking for the majority, stated that the recount as permitted by Indiana law was not a judicial inquiry and thus compatible with Section 5 of Article 1 of the United States Constitution and within the purview of Section 4 of the same article which empowers the various states to provide appropriate election machinery. Of particular note is the court’s definition of a judicial inquiry :
“ * * * ‘A judicial inquiry investigates, declares and enforces liabilities as *146 they stand on present or past facts and under laws supposed already to exist. That is its purpose and end.’ [Prentis v. Atlantic Coast Line R. Co.], 211 U.S. [210] at 226, 29 S.Ct., [67] at 69 [53 L. Ed. 150], The state courts’ duties in connection with a recount may be characterized as ministerial, or perhaps administrative, but they clearly do not fall within this definition of a ‘judicial inquiry.’ ” (92 S.Ct. at 809)
In the instant case the relief sought by Respondent clearly falls within the scope of a judicial inquiry. The Court is asked to determine the validity of certain absentee ballots and to conduct an eviden-tiary hearing as to the alleged malfunction of one voting machine. Most importantly, his petition specifically calls for the court to make a determination contrary to a decision anticipated from the Parish Custodian of Voting Machines and the East Baton Rouge Parish Board of Supervisors of Elections, whose duties we hold to be ministerial for reasons stated above.
The forum for a resolution of these issues is the United States House of Representatives. Article 1, Section 5, United States Constitution, 2 U.S.C.A. § 381 et seq.
Our own Constitution and jurisprudence accords with this view. Louisiana Constitution Article 3, Section 10, provides as follows:
“Section 10. Each house shall be the judge of the qualifications, election, and returns of its own members, choose its own officers, except the president of the Senate, determine the rules of its procedure, not inconsistent with the provisions of this Constitution, and may punish its members for disorderly conduct and contempt, and, with the concurrence of two-thirds of all its members elected, may expel a member.”
Similar language was contained in Article 23 of the Louisiana Constitution of 1879.
In considering Article 23 of the Constitution of 1879 our Supreme Court in State v. Houston, 40 La.Ann. 598, 4 So. 482 (1888), declared that a district court was without jurisdiction to order the production of ballot boxes, returns, tally sheets, et cetera, in open court where the intention was to break the seals and conduct a recount, holding that this controversy was reserved unto the Louisiana House of Representatives by virtue of Article 23, above.
In the recent case of Lee v. Lancaster, 262 So.2d 124 (4 La.App.1972), the court held that Article 3, Section 10 of our present Constitution provides that a court is without jurisdiction to inquire into the qualifications of a candidate elected to the House of Representatives of the State of Louisiana.
If our own law prohibits judicial inquiry into the qualifications, election and returns of candidates to the legislative branch of government in general elections, the same reasoning applies, a fortiori, to candidates seeking election to the Congress of the United States.
For the foregoing reasons, we are of the opinion that the trial court was without jurisdiction to inquire into the election returns of the general election held on November 5, 1974, to elect a member to the House of Representatives of the United States Congress.
While we are satisfied, for reasons stated above, that the District Judge is without jurisdiction to restrain the defendants herein from “counting, canvassing, totaling, tabulating, recording, and promulgating any vote cast on voting machine No. 13067 used in Ward 1, Precinct 46-B, Parish of East Baton Rouge, Louisiana, in the Congressional election held on November 5, 1974,” nevertheless, some provision must be made to preserve the voting machine in question. We agree with the argument advanced by respondent that if the temporary restraining order previously issued and the preliminary and permanent injunctions prayed for are not maintained and granted *147 respectively, that defendant, the Honorable Douglas Fowler, Custodian of Voting' Machines of the State of Louisiana, will, in the normal course of his operations, remove the said voting machine to his warehouse and the opportunity will be forever lost to physically examine the machine to determine whether or not it malfunctioned as a result of a mechanical defect. We agree with respondent’s contention that the machine itself its the best evidence of whether or not it was mechanically defective on the day of the election and it should be impounded under proper security to insure its inspection when this controversy is ultimately decided. We further agree that the candidates should have full opportunity to contest the results of the election and to have available to them any and all evidence which they may require in connection therewith. To this end we have treated plaintiff’s petition as one which seeks the relief of preserving the evidence upon which his election contest may be brought.
Accordingly, under the supervisory authority granted us by Article 7, Section 2, of the Louisiana Constitution, we do hereby remand the matter to the District Court and direct the said District Judge to issue appropriate orders to secure the integrity of the voting machine under such circumstances and conditions as to effectuate the above purposes. In the meantime, the restraining order issued by the trial court with respect to voting machine No. 13067 shall continue in full force and effect until such time as the trial court complies with the directive herein expressed.
It is further ordered that the writ heretofore issued is made peremptory and judgment is rendered herein recalling, vacating and setting aside the temporary restraining order issued by the trial court in all respects, save that portion thereof relating to voting machine No. 13067.
All costs of this proceeding are to be borne by respondent.
Writs made peremptory and remanded.

. Again we note that the election contest provision in the statute presupposes a promulgation of the results and is an additional reason to hold that election officials must first perform their ministerial duties as a condition precedent to filing an election suit.

. The Revised Statutes of 1856 provided for contests for the office of Sheriff, Coroner and Clerk of the Parish of Orleans and Clerks of District Courts, Parish Recorders, Sheriffs, Coroners, Justices of the Peace, and other parish officers elected by the people. The Revised Statutes of 1870 included identical provisions. Acts 1877, No. 24, Section 1, omitted reference to Orleans, but added the state offices of Secretary of State, Auditor of Public Accounts, State Treasurer, Attorney General, and Superintendent of Public Education. Municipal offices were added to the list by Act 1894, No. 24, Section 1. R.S. 18 :1251 now governs any parish, district, or municipal office, plus Secretary of State, State Auditor, State Treasurer, Attorney General or State Superintendent of Education. Congressional seats have, therefore, never been included within the purview of this general election statute.