BOARD OF EDUCATION OF OAKLAND SCHOOLS v
SUPERINTENDENT OF PUBLIC INSTRUCTION

Docket No. 58010. Argued March 1, 1977 (Calendar No. 4).—Decided
August 29, 1977.

The Board of Education of Oakland Schools brought a complaint
in the Court of Appeals for mandamus against the Superintend-
ent of Public Instruction, John W. Porter, the State Board of
Education, and the State Treasurer, Allison Green, to compel
payment of state school aid under the Gilbert E. Bursley School
District Equalization Act. When the defendants computed
1973–74 school aid for the intermediate school districts, the
total exceeded the amount appropriated by the Legislature for
that purpose. To eliminate the deficit the defendants reduced
the payments to all districts pro rata. The Court of Appeals,
McGregor, P. J., and T. M. Burns and N. J. Kaufman, JJ.,
granted mandamus which ordered the defendants to issue a
warrant to the plaintiff for the amount their aid was reduced
(Docket No. 22076). Defendants appeal. *Held:*

1. The construction given to a statute by those charged with
the duty of executing it is always entitled to the most respect-
ful consideration and ought not to be overruled without cogent
reasons. Defendants correctly interpreted the Legislature's al-
lowance of stated total funds for intermediate school districts
for the 1973–74 school year as an absolute maximum. Defend-
ants interpreted the three alternative funding provisions to
require computation at the outermost limit of each alternative.
That interpretation, while not the only one possible, was not
unreasonable, and gave maximum effect to the legislative in-
tent by allowing maximum interplay among the elements of
the amended statute.

2. Although the Bursley Act itself did not explain what was
to be done when allocations exceeded appropriations, the gen-
eral educational appropriation contemplates pro-rata reduction.

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law § 233 *et seq.*
[2] 68 Am Jur 2d, Schools §§ 8, 85 *et seq.*
[3] 52 Am Jur 2d, Mandamus § 32.
[4] 52 Am Jur 2d, Mandamus § 245.

Defendants' application of the legislative directive for the general appropriation to payments under the Bursley Act was a reasonable interpretation of the legislative intent.

3. Mandamus is not a matter of right. Issuance of a writ of mandamus is discretionary and governed by equitable principles. When the plaintiff brought its action, the entire appropriation for the school year had been distributed. The monies to pay plaintiff's claim would necessarily come from appropriations to other districts not party to this proceeding. The injurious effect on the rights of others provides a cogent reason why mandamus should not issue.

Reversed.

66 Mich App 505; 239 NW2d 645 (1976) reversed.

1. STATUTES—CONSTRUCTION—ADMINISTRATIVE INTERPRETATION.

The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.

2. SCHOOLS AND SCHOOL DISTRICTS—APPROPRIATIONS—STATE SCHOOL AID—EQUALIZATION—STATUTES.

The Superintendent of Public Instruction and State Treasurer correctly interpreted the Legislature's allowance of stated total funds for intermediate school districts for the 1973–74 school year as an absolute maximum; their interpretation of three alternative funding provisions of the Gilbert E. Bursley School District Equalization Act to require computation of state school aid at the outermost limit of each alternative, while not the only possible interpretation, was not unreasonable and gave maximum effect to the legislative intent (MCL 338.1181; MSA 15.1919[581], as amended by 1973 PA 101; 1973 PA 108, § 5).

3. MANDAMUS—EQUITY—WRITS.

Mandamus is not a matter of right; issuance of a writ of mandamus is discretionary and governed by equitable principles.

4. SCHOOLS AND SCHOOL DISTRICTS—APPROPRIATIONS—STATE SCHOOL AID—EQUALIZATION—MANDAMUS.

There is reason to refuse a writ of mandamus to order the State Treasurer to issue a warrant to a school district for the amount by which state school aid to the district was reduced where, when the school district brought its action for mandamus, the entire appropriation for that school year had been distributed and the monies to pay the claim would necessarily come from appropriations to other districts not party to the proceeding;

the injurious effect on the rights of others provides a cogent reason why mandamus should not issue (MCL 338.1181; MSA 15.1919[581]; 1973 PA 108, § 5).

*Cross, Wrock, Miller & Vieson* (by *Gene S. Davis)* for plaintiff.

 *Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gerald F. Young* and *Thomas F. Schimpf,* Assistants Attorney General, for defendants.

FITZGERALD, J. The issue in this appeal is whether defendants violated § 81(1) of the Gilbert E. Bursley School District Equalization Act of 1973 in allocating funds to intermediate school districts for the 1973–74 school year. For the 1973–74 school year, the State School Aid Act, 1972 PA 258, as amended by the Bursley Act, 1973 PA 101, MCLA 388.1101 *et seq.;* MSA 15.1919(501) *et seq.,* provided:

"From the amount appropriated in section 11,[1] there is allocated to intermediate districts as established under the school code of 1955, the sum necessary but not to exceed $8,350,000.00 to provide state aid to intermediate districts. There shall be allocated to each intermediate district a sum obtained by multiplying the number of pupils in membership in the constituent districts of the intermediate district by $8.00 each, which shall be reduced by a sum equal to .2 mill on the state equalized valuation of the property in the intermediate district, or for any intermediate district having a fixed allocation of less than .2 mill adopted as a separate limitation pursuant to section 6 of article 9 of the state constitution of 1963, shall be reduced by a sum equal to

[1] Section 11 of the Bursley Act, MCLA 388.1111; MSA 15.1919(511) appropriates from the school aid fund for each fiscal year "the sum necessary to fulfill the requirements of this act", and from the general fund for each fiscal year "the sum necessary to meet any deficiency".

the fixed allocation levied on the state equalized valuation of the property in the intermediate district. However, an intermediate district shall not receive less than a 10% increase nor more than a $1.50 per pupil increase, in state aid under this subsection in 1973–74 over the state aid received under sections 81 and 82 in 1972–73."

Defendants used the following process to allocate the $8,350,000 of state aid among the state's 58 intermediate districts. First, defendants computed a base amount of state aid for each intermediate district by using the per pupil/state equalized valuation formula set out in the second sentence of § 81(1). Defendants then determined whether that base amount fell within the limits set by the last sentence of § 81(1)—more than a 10% increase, but less than a $1.50 per pupil increase—over 1972–73 state aid. If so, then the computed base amount of state aid was allocated to the district. If the base amount was less than a 10% increase over 1972–73 state aid for a given district, defendants allocated additional funds to reach the 10% increase level. If the district's computed base amount exceeded a $1.50 per pupil increase over 1972–73 state aid, defendants reduced that district's base amount to the amount representing a $1.50 per pupil increase.

Defendants' process of computation resulted in funding for 18 intermediate districts at the base amount computed by using the per pupil/state equalized valuation formula. For 27 districts, the base amount would be increased to provide 10% more state aid than in 1972–73, while for 13 districts the base amount would be decreased to the figure representing $1.50 per pupil more state aid than 1972–73.

When defendants added together the amounts

allocated to each district, they discovered that the total was $176,055 more than the $8,350,000 appropriated by § 81(1) of the Bursley Act. Defendants then performed one final computation. They multiplied each district's allowance by .97933432 to achieve a pro-rata reduction.

Plaintiff commenced an original mandamus action in the Court of Appeals, asking that defendants be compelled to pay over an additional $23,944 in state aid for the 1973–74 school year. Plaintiff's base amount of state aid, computed using the per pupil/SEV formula, was $684,311. But plaintiff had received $1,053,332 in 1972–73. Thus, plaintiff was one of the 27 districts eligible for 10% increased funding. Plaintiff's claim of $23,944 represents the amount plaintiff's allocation was reduced by proration.

Plaintiff contends, and the Court of Appeals agreed, that defendants violated the Legislature's mandated 10% increase in subjecting plaintiff's allocation to pro-rata reduction. We disagree.

We find defendants' interpretation of § 81(1) a reasonable construction of the statute and decline to affirm the Court of Appeals issuance of a writ of mandamus. In *Magreta v Ambassador Steel Co*, 380 Mich 513, 519; 158 NW2d 473 (1968), we quoted with approval the following language of the United States Supreme Court in *United States v Moore*, 95 US 760, 763; 24 L Ed 588, 589 (1877):

" 'The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.' "

Defendants correctly interpreted the Legislature's allowance of $8,350,000 total funds for intermediate districts for the 1973–74 school year as an

absolute maximum. Const 1963, art 9, § 17. Defendants interpreted the three alternative funding provisions to require computation at the outermost limit of each alternative. That interpretation, while not the only possible interpretation, was not unreasonable. That construction gave maximum effect to the legislative intent as we perceive it.

The Court of Appeals correctly noted that the Legislature, by enacting the Bursley Act, radically altered the method of allocating funds to intermediate school districts[2] in an attempt to equalize state aid. To ameliorate the drastic changes from prior year funding that would have resulted for some districts through use of the new per pupil/ SEV formula, the Legislature modified the formula by enacting the alternate provisions of the last sentence of § 81(1). By performing its calculations at the outer limits of the alternative provisions of § 81(1), defendants achieved a result allowing maximum interplay among the elements of the statute.

But defendants' calculations resulted in total funding exceeding the amount appropriated by the Legislature. Defendants' pro rata reduction of all allocations was consistent with their established practice in similar situations and preserved the legislative funding scheme inherent in § 81(1).

Although the Bursley Act itself did not explain what was to be done when allocations exceeded appropriations, the general educational appropria-

_____

[2] Funds had been apportioned for the 1972–73 school year by 1972 PA 258, § 82 as follows:

"There shall be apportioned to each intermediate district an amount equal to the operating budget of the district multiplied by the percentage that the total state aid received by all of the constituent districts of the intermediate district under the provisions of the state school aid act in effect during the preceding school year was of the total current operating expenditures of all the constituent districts of the preceding year, except that no intermediate district shall receive aid on a basis of less than 50% of its approved budget."

tion contemplates pro-rata reduction. Section 11 of the Bursley Act appropriates from the school aid fund "the sum necessary to fulfill the requirements of this act". Monies reached the school aid fund for the 1973–74 school year via 1973 PA 108, the general appropriation for the Michigan Department of Education. Section 15 of 1973 PA 108 provided:

"There is appropriated to the state school aid fund from the general fund of the state for the fiscal year ending June 30, 1974, such sum as may be necessary to pay the amount of state aid for schools as authorized by Act No. 258 of the Public Acts of 1972 [the State School Aid Act], as amended, being sections 388.1101 to 388.1279 of the Michigan Compiled Laws."

Section 5 of 1973 PA 108 provided for pro-rata reduction when an appropriation was insufficient:

"Except as otherwise provided by law, where the amount herein appropriated is less than the amount called for or required to be distributed by existing law, the state official, or body responsible for the administration of the particular appropriation shall reduce the payments under the appropriation made in this act upon a pro rata basis in such manner that the payments shall not exceed the appropriations herein contained."

Defendants' application of the legislative directive of § 5 to payments under the Bursley Act was a reasonable interpretation of legislative intent.

Mandamus is not a matter of right. Issuance of a writ of mandamus is discretionary. *Schwartz v Secretary of State,* 393 Mich 42, 50; 222 NW2d 517 (1974); *McLeod v State Board of Canvassers,* 304 Mich 120; 7 NW2d 240 (1943). Discretion in this case requires judicial restraint. We find no cogent

reason for overruling the administrative interpretation of the statute in question.

Issuance of a writ of mandamus is governed by equitable principles. *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276; 118 NW2d 258 (1962). An equitable principle provides a cogent reason for denial of mandamus in this case. When plaintiff brought its action, the entire appropriation for the 1973–74 school year had been distributed. The monies necessary to pay plaintiff the $23,944 it claims would necessarily have to come from appropriations to other districts not parties to this proceeding.[3] We find the injurious effect on the rights of others a cogent reason why mandamus should not issue. See 52 Am Jur 2d, Mandamus, § 33, p 359.

The Court of Appeals is reversed. No costs, this being a public question.

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.

---

[3] Although § 15 of the State School Aid Act, MCLA 388.1115; MSA 15.1919(515), authorizes adjustment in subsequent appropriations for overpayment and underpayment as to individual districts, § 15 does not authorize robbing Peter to pay Paul.