# Court of Appeals, State of Michigan

## ORDER

Connor Berdy v Sonya Buffa

Docket No. 349171

LC No. 2019-001802-AW

Jonathan Tukel
Presiding Judge

Mark J. Cavanagh

Elizabeth L. Gleicher
Judges

The Court orders that the June 6, 2019 majority and dissenting opinions issued in this matter are hereby AMENDED to correct a clerical error: In the caption of the opinions, the name of defendant-appellant is corrected to read "SONYA BUFFA."

In all other respects, the June 6, 2019 majority and dissenting opinions remain unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUN - 7 2019
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

CONNOR BERDY,

Plaintiff-Appellee,

v

SONYA BURDA, in her capacity as Elected City
Clerk, and WARREN CITY ELECTION
COMMISSION,

Defendant-Appellants,

and

FRED MILLER, in his capacity as Macomb
County Clerk,

Defendant.

FOR PUBLICATION
June 6, 2019

No. 349171
Macomb Circuit Court
LC No. 2019-001802-AW

Before: TUKEL, P.J., and CAVANAUGH and GLEICHER, JJ.

TUKEL, P.J. (*dissenting*).

I respectfully dissent.

Defendants argue that mandamus is not an available remedy in this case. "Although this Court reviews a trial court's decision to issue or deny a writ of mandamus for an abuse of discretion, this Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance." *Wilcoxon v City of Detroit Elec Comm*, 301 Mich App 619, 630; 838 NW2d 183 (2013) (quotation marks and citations omitted).

As a general matter, in order to justify a writ of mandamus,

[t]he plaintiff must show that (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it

involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. [*Barrow v City of Detroit Elec Comm*, 301 Mich App 404, 412; 836 NW2d 498 (2013).]

"[T]his Court has held that where the duty of the public official is certain, the Court cannot in its discretion deny the writ." *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728, 744; 322 NW2d 152 (1982).

*Barrow* is controlling in this case as to the potential availability of mandamus. *Barrow* involved a claim that a candidate was ineligible for the August primary ballot; the plaintiff in *Barrow* argued that then-candidate Michael Duggan was not eligible for the ballot because he had not been a resident and a qualified and registered voter for the requisite time period, as mandated by the city charter. *Barrow*, 301 Mich App at 407. Here, similarly, the allegation is that four candidates are not eligible for the August primary ballot (for Warren City Council) because they have served the maximum terms permitted by the city charter. In *Barrow*, the defendants were the City of Detroit Election Commission and the Detroit City Clerk. *Id*. Here, the defendants are the Warren City Election Commission and the Warren City Clerk. Moreover, although not mentioned by the *Barrow* Court, "[t]he boards of election commissioners shall correct such errors as may be found in said ballots, and a copy of such corrected ballots shall be sent to the secretary of state by the county clerk." MCL 168.567. That section refers to "official primary ballots," the election at issue here. Thus, defendant Warren City Election Commission had a duty to correct any error on the ballots, which necessarily required that it not list an ineligible candidate.

In *Barrow*, we determined that "mandamus is the proper method of raising [the plaintiff's] legal challenge" to the candidacy. *Barrow*, 301 Mich App at 412. In so doing, we relied on various provisions of the Michigan Election Law, MCL 168.1 *et seq*. Under the Michigan Election Law, "[i]t is the duty of the board of city election commissioners to prepare the primary ballots to be used by the electors." MCL 168.323. In addition, "[t]he election commission of each city and township shall perform those duties relative to the preparation, printing, and delivery of ballots as are required by law of the boards of county election commissioners." MCL 168.719. Thus, the *Barrow* Court held that "[i]t is undisputed that defendants have the statutory duty to submit the names of the *eligible* candidates for the primary election, see MCL 168.323 and MCL 168.719." *Barrow*, 301 Mich App at 412 (emphasis added). Further, "[u]pon review, if we in turn likewise determine that Duggan did not meet the qualifications to be a candidate for elected office under the charter, plaintiff would have a clear legal right to have Duggan's name removed from the list of candidates, the Election Commission would have a clear legal duty to remove Duggan's name, the act would be ministerial because it would not require the exercise of judgment or discretion, and plaintiff would have no other legal or equitable remedy." *Id*. at 412-413.

I. PLAINTIFF HAS A RIGHT TO THE PERFORMANCE OF THE SOUGHT ACTION

I disagree with the majority's view that plaintiff has failed to show that he had a right to the performance of the duty sought to be compelled.

First, the majority's interpretation of the Charter is contrary to the Charter's plain and unambiguous language. As already noted, we review the interpretation of a city charter de novo. *Trahey v City of Inkster*, 311 Mich App 582, 593; 876 NW2d 582 (2015). Thus, we give no deference to any other interpretations, *Buchanan v City Council of Flint*, 231 Mich App 536, 542 n 3; 586 NW2d 573 (1998), including those of the city attorney.

> "When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes. The provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear and unambiguous. Courts apply unambiguous statutes as written." [*Barrow*, 305 Mich App at 663 (citation omitted).]

The Charter provides for seven members, two elected at-large and five who represent districts. Charter, § 5.1(a). There are no differences in the powers or authorities of council members; any combination of five members, irrespective of whether at-large or elected-district members, constitute a quorum and can conduct all business of the council. Charter, § 5.3(e).

The majority quotes the city attorney's conclusion that "the two groups had different election rules and responsibilities, such as different residency requirements and separate campaigning and fundraising rules." But that statement from the city attorney actually is incorrect. Those provisions relate to election matters, which of course are different for an at-large representation as opposed to an elected-district representation. But they draw no distinction regarding the authorities of serving council members to assemble a quorum or to conduct business. Importantly, if there were two different classes of council members, it would not be a legal irrelevancy under the Charter which of the five were present on any given occasion to constitute a quorum in order to conduct business. See Charter, § 5.3(e).

And while the majority soft-peddles the city attorney's incongruous statement that the council is "bicameral" by stating that it "may not be a true bicameral legislature," there is no doubt on this issue. A bicameral legislature literally means "two houses" and thus requires two houses. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "bicameral" as "having, consisting of, or based on two legislative chambers").[1] Additionally, if there really were a "bicameral" council, it certainly would be of great significance to spell that out, since a quorum in one house would not constitute a quorum in the other. Nevertheless, the Charter treats the seven council members interchangeably for official purposes and only provides a single mechanism for determining a single quorum. Of course, none of what the city attorney opined matters at all, given that our review on this matter, as an issue of law, is de novo; but even under a more deferential standard of review, the city attorney's position would have to be rejected.

---

[1] The city attorney and majority also note that only an at-large city council member can serve as mayor pro tem. However, that is an eligibility provision for the position of mayor pro tem, not for city council members; and as it only applies to one of the two at-large members in any event, it could not create a separate class for the at-large members as a whole.

-3-

Sections 4.3(d) and 4.4(d) govern how many terms or how long a person may serve as an elected official. Section 4.3 states,

> A person shall not be eligible to hold the office of mayor for more than the greater of five (5) complete terms or twenty (20) years. A person shall not be eligible to hold the position of city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

And § 4.4(d) provides,

> A person shall not be eligible to hold the office of mayor for more than the greater of five (5) complete terms or twenty (20) years. A person shall not be eligible to hold the position of city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that particular office.

The only difference between these two provisions is the addition of the word "particular" toward the end of § 4.4(d).

The only reasonable reading of the Charter provisions for three-term or 12-year maximum periods of service is that they each apply separately to anyone elected to "the position of city council." The Charter's use of the definite article "the" and the singular "position" indicate that there is only *one* class of city council members. See *Robinson v City of Lansing*, 486 Mich 1, 14-15; 782 NW2d 171 (2010) (stating that the use of "the" indicates a "specific or particular" thing). Any reliance on "that particular office" to somehow indicate that it applies to multiple city council positions is without merit. The clear meaning of the last sentence in § 4.4(d), "A person shall not be eligible to hold the position of city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that particular office," is that "particular office" refers to the previously mentioned positions of city council, city clerk, and city treasurer. Indeed, it is likely that no one who voted on those sections of the Charter, whether for or against, would have fathomed that what was being voted on were not provisions for three complete terms or 12-year maximums, but rather six complete terms and 24-year maximums. That is so for the reason that there is not a single word in the Charter stating that there are two different classes of city council members, as to whom the maximum term provisions would apply separately. See, e.g., *Wayne Co v Hathcock*, 471 Mich 445, 460; 684 NW2d 765 (2004) ("This Court typically discerns the common understanding of constitutional text by applying each term's plain meaning at the time of ratification.").

Defendants argue in their reply brief that the Charter has received a settled judicial construction which cannot be lightly abandoned under the rules for stare decisis. However, as to this issue, no rule set forth by a lower court was previously "settled." As noted, *this Court* reviews whether plaintiff has a clear legal right and whether defendants have a clear legal duty de novo. We owe no deference whatsoever to previous rulings by a circuit court, either in the 2015 case, *Olejniczak v City of Warren Elec Bd*, or in this case presently; and the unpublished order of this Court in *Olejniczak* is not of precedential value to us. See MCR 7.215(C). What would be a settled rule would be a definitive construction from this Court of the meaning of the Charter; as we held in *Barrow*, "Upon review, if *we* in turn likewise determine that Duggan did not meet the qualifications to be a candidate for elected office under the charter, plaintiff would

have a clear legal right to have Duggan's name removed from the list of candidates, the Election Commission would have a clear legal duty to remove Duggan's name, the act would be ministerial because it would not require the exercise of judgment or discretion, and plaintiff would have no other legal or equitable remedy." *Barrow*, 301 Mich App at 412-413 (emphasis added). Thus, even if defendants had simply been relying on the city attorney's interpretation of the City Charter and such an interpretation could be considered "difficult," "a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts *regardless of the difficulty of the legal question to be decided*." *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (quotation marks and citation omitted; emphasis added). And here, the plain language of the Charter reveals that a person is limited to serve a total of three terms or 12 years in the position of city council.

Therefore, I would hold that the trial court did not err in determining that plaintiff had a clear legal right to the performance of the duty sought to be compelled, i.e., the removal of the four individuals on the ballot for city council. See *Barrow*, 301 Mich App at 412 (stating that if the Court determines that a person is not qualified to be a candidate, "plaintiff would have a clear legal right" to have the person's name removed from the list of candidates).

## II. DEFENDANTS HAD A CLEAR LEGAL DUTY TO REMOVE THE NAMES FROM THE BALLOT AND THE ACT WAS MINISTERIAL

I also disagree with the majority's view that defendants did not have a clear legal duty to remove the names from the ballot. Defendants argue that the duty of determining eligibility for the ballot is vested in the Warren City Council, pursuant to the Charter. The charter provides in relevant part that "[t]he council shall be the judge of the election and qualifications of its members, *subject to the general election laws of the state and review by the courts, upon appeal*." Charter, § 4.2 (emphasis added). The Charter thus does not give unlimited discretion to the council; rather, it gives council such discretion as is not limited by the "general election laws of the state."[2] Such "general election laws of the state" are precisely what we construed in *Barrow*, and under which "[i]t is undisputed that defendants have the statutory duty to submit the names of the *eligible* candidates for the primary election." *Barrow*, 301 Mich App at 412 (emphasis added); see also MCL 168.719 ("The election commission of each city and township shall perform those duties relative to the preparation, printing, and delivery of ballots as are required by law of the boards of county election commissioners."). Consequently, and notwithstanding the Charter, the courts have a duty to apply the "general election laws of the state" regarding a candidate's eligibility for office, even where that eligibility is limited by a provision of a city charter. See MCL 168.321(1).

Moreover, as we held in *Barrow*, 301 Mich App at 412, once a court determines that a candidate is legally ineligible to run for office, "the Election Commission would have a clear

---

[2] Nor could the charter grant unlimited discretion to the council. "No provision of any city charter shall conflict with or contravene the provisions of any general law of the state." MCL 117.36.

legal duty to remove [the candidate's] name." This holding is supported by § 13.15(2) of the Charter, which provides that one of the duties of the election commission is "[t]o prepare and print election ballots . . . for all city officers *for whom the electors are entitled to vote . . . .*" (Emphasis added.) Contrary to the majority, the Election Commission makes that determination for the primary purpose in the first instance, not after certification by the County Board of Canvassers. Further, "the act would be ministerial because it would not require the exercise of judgment or discretion," as the law leaves no discretion once a candidate's ineligibility is clear, "and plaintiff would have no other legal or equitable remedy." *Id*. at 412-413; see also *Romulus City Treasurer*, 413 Mich at 744 ("[W]here the duty of the public official is certain, the Court cannot in its discretion deny the writ.").[3]

## III. CONCLUSION

Thus, none of defendants' arguments is persuasive on the question of whether there is more than one class of council member; rather, there is only a single class of city council member, as to whom the Charter provides for a maximum of three terms in office or a total of 12 years. It is undisputed that the four defendants here who are council members have served or will have served those maximum terms by the time of the 2019 elections; they are thus ineligible under the Charter. Therefore, the City Elections Commission was duty-bound to remove the names of the individuals from the ballot. Because the trial court properly ordered mandamus requiring the City Elections Commission to do so, I would affirm the trial court's judgment.

/s/ Jonathan Tukel

---

[3] *McLeod v State Bd of Canvassers*, 304 Mich 120; 7 NW2d 240 (1942), and the line of cases the majority cites arguably have been supplanted by MCL 168.323, which imposed on city election commissioners the duty to prepare the primary ballots; that provision was enacted as § 323 of 2013 PA 53, after *McLeod* had been decided, and thereby may have implicitly overruled it. If two statutes are incapable of harmonious construction, then there may be a repeal by implication or a sub silentio repeal, such that "a more recently enacted statute takes precedence over an earlier one, especially if the more recent one is also more specific," *City of Kalamazoo v KTS Indus*, 263 Mich App 23, 34; 687 NW2d 319 (2004), although "repeals by implication are disfavored." *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 651 852 NW2d 865 (2014). If so, then the cited cases would no longer be good law. See *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191 n 32; 880 NW2d 765 (2016) (stating that while the Court of Appeals normally is bound to follow decisions of the Supreme Court, "lower courts have the power to make decisions without being bound by prior cases that were decided under the now-repudiated previous positive law"). We need not decide that issue here, and I express no opinion as to it because the premise of the majority's citation of *McLeod*, that the Charter makes the council the sole and exclusive judge of the qualifications of its members, is inapplicable.