# JUNE TERM, 1914.

SINCLAIR *v.* COMMON COUNCIL OF THE CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—CITIES—CHARTER—ELECTIONS.

By the terms of the charter of the city of Grand Rapids, the common council is composed of the mayor and aldermen; the common council is constituted judge of the election and qualifications of its members, and the action of the common council in so determining is final. No change in the charter was effected by the amendment of 1913, providing for nonpartisan municipal elections.

2. SAME—RECOUNT—MANDAMUS.

A recount of the votes for mayor will not be ordered by mandamus in proceedings brought by the candidate declared to be defeated by the board of canvassers: the remedy of the claimant is exclusively in the common council as elected at the same election as that in which the mayor was chosen; and the rule was not changed by a provision of the amendment that, in cases of contested election for any office, the contest shall be decided by the council as nearly as may be according to the laws of the State regulating election contests, and a certificate of election shall be *prima facie* evidence of the facts therein stated.

Certiorari to the superior court of Grand Rapids; Stuart, J. Submitted June 2, 1914. (Calendar No. 26,234.) Decided June 23, 1914.

Mandamus by Malcolm C. Sinclair against the common council of the city of Grand Rapids to compel respondent to recount the votes cast for mayor. An order granting the writ is reviewed by respondent on writ of certiorari. Reversed.

(186)

*Raymond M. Ferguson,* for appellant.

*George C. Brown* and *Colin P. Campbell,* for appellee.

PER CURIAM. The relator and George Ellis were the two candidates for mayor at the general nonpartisan election held in the city of Grand Rapids, on Monday, April 6, 1914. From the official returns, it appears that Mr. Ellis was elected. At 7 o'clock on the evening of April 9th, the common council met, sitting as a board of canvassers, in accordance with the provisions of the city charter. At 4 o'clock in the afternoon of that day, the relator filed his petition with the city clerk of the city of Grand Rapids for a recount of the votes cast for mayor in said election in certain precincts, and paying at the same time the deposit required by law. A copy of the petition was served on Mr. Ellis at 4:45 p. m. This petition was considered by the council, sitting as a board of canvassers, and denied, on the ground that the opposing candidate had not received 12 hours' notice, as required by statute. Act No. 149, Pub. Acts 1895, as amended by Act No. 352, Pub. Acts 1913.

Mr. Ellis presided at this meeting and appointed the committee which considered the petition and reported in favor of denying the same for the reason stated. On April 14th, the relator filed his petition for a writ of mandamus and, on April 20th, a peremptory writ of mandamus was issued, directing the recount. We are now asked to review by certiorari the proceedings had in the superior court of the city of Grand Rapids. The questions thus raised are stated as follows:

(1) The mayor being a member of the common council, and the common council being the judge of the election and qualifications of its own members and empowered to decide upon and determine contested election of members thereof, has the respondent any

authority, either in its ordinary capacity or as a canvassers board, to interfere with the duties of the incoming council?

(2) Has the superior court of Grand Rapids, or any municipal court, the general power to issue a writ of mandamus?

(3) Was the notice to relator's opponent required by the statute properly and lawfully furnished?

*First.* Sections 11 and 12 of the nonpartisan provisions of the charter of the city of Grand Rapids in regard to elections provide:

"SEC. 11. The council shall be the board of canvassers for all elections. On the first Thursday after any election the council shall meet at seven o'clock p. m. and proceed to canvass the return of such election and shall thereupon declare the result and what persons are nominated or elected; and in case of a tie vote for any office shall decide by lot which of the persons having the highest and equal number of votes shall be nominated for or elected to such office. A statement of such canvass shall be made out and signed by the president of the council and filed with the city clerk, and a duplicate thereof shall be filed with the county clerk. The city clerk, within three days thereafter, shall make out and cause to be delivered to each person so nominated or elected a certificate of such nomination or election, as the case may be.

"SEC. 12. A certificate of election shall be *prima facie* evidence of the facts therein stated; and in all cases of contested election for any office the contest shall be decided by the council as nearly as may be according to the laws of the State regulating proceedings in cases of contested elections for State officers. The council shall have power to settle any question concerning any other election procedure or questions involved therein, not specifically covered by this charter or by the provisions of the general election laws of the State to which it refers."

By the terms of the charter of the city of Grand Rapids, the common council is composed of the mayor and aldermen. By virtue of title 10, § 4, of the

charter, the common council is the judge of the election and qualification of its own members and decides upon and determines contested elections of its members. It is contended by relator, and was so held by the learned judge of the superior court, that this provision is inconsistent with the general right of contest for any office, according to the laws of the State given by section 12, *supra,* and is repealed by the nonpartisan election law amendment. It has been the policy in this State to vest in legislative bodies the power to determine finally the elections and qualifications of their own members. The reasons for this policy received the consideration of this court in *Naumann* v. *Detroit Board of Canvassers,* 73 Mich. 252, 253, 254 (41 N. W. 267, 268), when Mr. Justice CAMPBELL, speaking for the court, said:

"It has been very common in this State, for obvious reasons, to prevent delay and litigation, to vest in the legislative boards of municipal corporations the same power of determining the claims of persons to belong to them that is vested in congress and the State legislature. It is always important to have as little delay and confusion as possible in the organization of such bodies, which directly represent the people, and are assumed to have as correct a sense of official duty as any other representative bodies. Public policy does not favor needless disturbances in the tenure of office, and the practice referred to has commended itself generally, and is probably as little liable to error as any other popular administrative machinery. * * *
"The question of finality in the action of a common council in such cases against even judicial interference has been settled several times in this State. In the case of *People* v. *Harshaw,* 60 Mich. 200 (26 N. W. 879, 1 Am. St. Rep. 498), the subject was discussed and decided, and reference made to previous decisions, especially *People* v. *Mayor,* 41 Mich. 3 (2 N. W. 179) ; *Cooley* v. *Ashley,* 43 Mich. 458 (5 N. W. 659) ; *Alter* v. *Simpson,* 46 Mich. 138 (8 N. W. 724) ; *Doran* v. *De Long,* 48 Mich. 552 (12 N. W. 848). The question is not an open one here."

The provision in the organic law of the city of Grand Rapids giving this power to the common council was before the people of Grand Rapids when the amendments of 1913 were adopted. We find nothing in these amendments which expressly repeals this provision in the charter. Can it be said that any of the provisions of section 12 are inconsistent with this power? The salient provisions of the section are:

(1) A certificate of election is made *prima facie* evidence only; (2) an election to any office may be contested; (3) the contest shall be decided by the council as nearly as may be according to the laws of the State regulating proceedings in cases of contested elections for State officers; (4) the council is the judge of all elections; (5) the power of the council to settle unprovided for questions of proceedure.

In our opinion, none of these features of the amendment is inconsistent with or necessarily repugnant to the power of the council to be the sole judge of the elections of its own members. A right of contest can clearly be had before the incoming council, at which time the certificate of election is only the *prima facie* right of the holder thereof to the office. In such a contest it shall be decided by the council as nearly as may be according to the laws of the State regulating proceedings in cases of contested elections of State officers, which, in the case of a contest of the right of a member of the council to hold his office, must be considered as a directory provision only. In our opinion, section 12 of the amendment should be construed in connection with title 10, § 4, of the charter, and both provisions given effect, if possible. This is in accordance with the decision of this court in *Hilton* v. *Grand Rapids Common Council,* 112 Mich. 500, 502, 503 (70 N. W. 1043, 1044), where this court said:

"Section 4, tit. 10, of the charter of 1877 (Act No.

282, Local Acts of 1877), provides that 'the common council shall be the judge of the election and qualification of its own members, and to decide upon and determine contested elections of members thereof.' It has been held in numerous cases that Act No. 208, Pub. Acts 1887, does not apply to a contest over an election to an office as a member of a body which, by law, is made the judge of the qualifications of its own members. This was held in *Naumann* v. *Detroit Board of Canvassers,* 73 Mich. 255 [41 N. W. 267], and was reaffirmed in *Wheeler* v. *Manistee Board of Canvassers,* 94 Mich. 448 [53 N. W. 914], and *Belknap* v. *Ionia Board of Canvassers,* 94 Mich. 516 ]54 N. W. 376].

"It is suggested that the present council is to be the judge of the election of the members of the body, and decide and determine upon contested elections. The reading of this clause would not indicate such a purpose. Title 2, § 20, reads as follows:

" 'The common council of the preceding year shall convene on the Thursday next succeeding such election, at 2 o'clock in the afternoon, at their usual place of meeting, and the statement of votes filed with the clerk of the city by the inspectors of election shall be produced by said clerk, when the common council shall forthwith determine and certify, in the manner provided by law, what persons are duly elected at the said election to the several offices respectively.'

"It is contended that this latter section confers upon the present council the authority not only to canvass the returns, but to determine what persons are elected to the several offices respectively, and that this implies the right to proceed in any manner provided by law, for the purpose of ascertaining what candidate has received the greatest number of votes. We think, however, that this section should be construed in connection with title 10, § 4, and, so construed, must be held to relate only to those officers the authority to adjudge and determine of whose election and qualification is not vested elsewhere, and that the case must be held to fall within *Naumann* v. *Detroit Board of Canvassers, supra.*"

Relator should bring his contest before the incom-

ing council for disposal, and the determination of that body with relation thereto is final.

Because of this conclusion, it will be unnecessary for us to determine the question of the jurisdiction of the superior court and the sufficiency of the notice.

The judgment of the superior court is reversed.