# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 11, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

159725 & (31)

CONNOR BERDY,
          Plaintiff-Appellant,

v

SONJA BUFFA, in her capacity as Elected
City Clerk and WARREN CITY ELECTION
COMMISSION,
          Defendants-Appellees,
and

FRED MILLER, Macomb County Clerk,
          Defendant.

SC:  159725
COA:  349171
Macomb CC:  2019-001802-AW

_____/

On order of the Court, the motion to expedite is GRANTED.  The application for leave to appeal the June 6, 2019 judgment of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals.  We agree with the dissenting Court of Appeals judge that the Warren Charter provides for a single class of city council members, subject to the term limits of the greater of three complete terms or 12 years in that office.  See Warren Charter, §§ 4.3(d) and 4.4(d).  We also agree that, because it is not disputed that the challenged candidates will have served those maximum terms by the time of the 2019 election, they are ineligible under the Warren Charter to be certified as candidates for that election.  Further, we agree with the dissenting judge that plaintiff's ability to show a clear legal right or a clear legal duty for purposes of mandamus does not depend upon the difficulty of the legal question presented.  See *Berry v Garrett*, 316 Mich App 37, 41 (2016) (" 'In relation to a request for mandamus, a clear, legal right is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts *regardless of the difficulty of the legal question to be decided*.' ") (emphasis added and citation omitted).  See also 55 CJS, Mandamus, § 74, p 107 ("[T]he requirement that a duty be clearly defined to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in

doubt. As long as the statute, once interpreted, creates a peremptory obligation for the officer to act, a mandamus action will lie.").

We disagree, however, with both the Court of Appeals majority and dissent regarding the proper interpretation and application of § 4.2 of the Warren Charter, which provides that "[t]he council shall be the judge of the election and qualifications of its members, subject to the general election laws of the state and review by the courts, upon appeal." The Court of Appeals majority concluded that, under § 4.2, "[n]either the elections commission nor the city clerk has the power to apply the terms of the charter and determine whether candidates are ineligible to run for office." *Berdy v Buffa*, ___ Mich App ___, ___ (2019) (Docket No. 349171); slip op at 4. The dissent, by contrast, concluded that § 4.2 may not have any role to play in light of MCL 168.323, which places on city election commissioners the duty "to prepare the primary ballots . . . ." *Id.* at ___ (TUKEL, P.J., dissenting); slip op at 6 n 3. We believe both of these conclusions are incorrect.

City charter provisions of this type are not unusual. See 3 McQuillin, Municipal Corporations (3d rev ed), § 12:148, p 671 ("Municipal charters and laws applicable usually confer power upon the council or governing legislative body to judge of the election and qualifications of its own members, and such laws are generally sustained."). These provisions have a long lineage, see *Naumann v Bd of City Canvassers of Detroit*, 73 Mich 252 (1889), and are based on analogous provisions in the federal and state constitutions, see US Const, art I, § 5 ("Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members . . . ."); Const 1963, art 4, § 16 ("Each house shall be the sole judge of the qualifications, elections and returns of its members, and may, with the concurrence of two-thirds of all the members elected thereto and serving therein, expel a member.").

Our Court has opined in the past about the policies undergirding municipal charter provisions similar to the one at issue here. In *Naumann*, 73 Mich at 253-254, we stated as follows:

> It has been very common in this State, for obvious reasons, to prevent delay and litigation, to vest in the legislative boards of municipal corporations the same power of determining the claims of persons to belong to them that is vested in Congress and the State Legislature. It is always important to have as little delay and confusion as possible in the organization of such bodies, which directly represent the people, and are assumed to have as correct a sense of official duty as any other representative bodies. Public policy does not favor needless disturbances in the tenure of office, and the practice referred to has commended itself

generally, and is probably as little liable to error as any other popular administrative machinery.[1]

Accordingly, Michigan courts have regularly given effect to such provisions, declining to second-guess a determination made by such a legislative body. See, e.g., *McLeod v State Bd of Canvassers*, 304 Mich 120, 129 (1942) (recognizing "the rule of law that where constitutional or statutory provisions make a legislative body the sole judge of the election and qualifications of its own members, the final decision rests in such body, and courts cannot interfere"); *Crossman v Hanson*, 4 Mich App 98, 102 (1966) ("[T]he council, by refusing to take affirmative action on the eligibility and qualifications of [the intervening defendant] has, by this very refusal, acted. It is well settled that a duty can be performed by a determination to take no action and that such a determination is not subject to review."); *Houston v McKinlay*, 4 Mich App 94, 97 (1966) ("In the instant case, the city charter gives the power to determine these qualifications to the council. In such a situation, quo warranto will not issue.").[2]

Importantly, however, Michigan courts applying either Const 1963, art 4, § 16, or an equivalent municipal charter provision, have consistently done so in the context of a *post-election* challenge to the results of an election. In addition to the cases cited above, every other case we have found (and that the parties have directed us to) applying such a provision has done so in the context of a challenge to the results of an election. See, e.g., *People ex rel Cooley v Fitzgerald*, 41 Mich 2 (1879); *Cooley v Ashley*, 43 Mich 458, 458 (1880); *Alter v Simpson*, 46 Mich 138, 139 (1881); *Auditor General v Bd of Supervisors of Menominee Co*, 89 Mich 552, 567 (1891); *Belknap v Bd of Canvassers of Ionia Co*, 94 Mich 516, 516-517 (1893); *Attorney General ex rel Beers v Bd of Canvassers of Seventh Senatorial Dist*, 155 Mich 44, 45 (1908); *Sinclair v Common Council of City of Grand Rapids*, 181 Mich 186, 187 (1914).

---

[1] The provision at issue in that case, contained in the Detroit Charter, provided that " 'the board of aldermen shall be the judges of the election and qualifications of its own members, and shall have the power to determine contested elections to said board.' " *Id.* at 254.

[2] We note that § 4.2 of the Warren Charter is arguably distinguishable from the provisions discussed in the above cases because § 4.2 expressly provides for judicial review of determinations made by the Warren City Council. See Warren Charter, § 4.2 ("The council shall be the judge of the election and qualifications of its members, subject to the general election laws of the state and *review by the courts, upon appeal*.") (emphasis added). We offer no opinion on the effect of such language on a post-election challenge, since that issue is not before us.

This makes sense—by their plain language, these provisions grant a legislative body the authority to review the election and qualifications "of its members."[3]   See Warren Charter, § 4.2 ("The council shall be the judge of the election and qualifications *of its members . . . .*") (emphasis added); Const 1963, art 4, § 16 ("Each house shall be the sole judge of the qualifications, elections and returns *of its members . . . .*") (emphasis added).   Until an election is actually completed, and a winner announced, a challenged individual is merely a *candidate*, rather than a *member*, of a legislative body.   See *Webster's New Collegiate Dictionary* (1974) (defining "candidate" as "one that aspires to or is nominated or qualified for an office, membership, or award" and "member" as "one of the individuals composing a group").   A mere candidate would have no grounds for claiming membership within a legislative body before an election has occurred.   Cf. *Barry v United States ex rel Cunningham*, 279 US 597, 614 (1929) ("It is enough to say of this, that upon the face of the returns he had been elected and had received a certificate from the Governor of the state to that effect.   Upon these returns and with this certificate, he presented himself to the Senate, claiming all the rights of membership.   *Thereby the jurisdiction of the Senate to determine the rightfulness of the claim was invoked and its power to adjudicate such right immediately attached by virtue of § 5 of Article I of the Constitution.*") (emphasis added).

Accordingly, it is no surprise that, as demonstrated above, our caselaw has consistently applied such provisions in the context of a challenged election result. Moreover, our understanding is consistent with the purposes of such provisions, which, as mentioned, are "to have as little delay and confusion as possible in the organization of such bodies" and to avoid "needless disturbances in the tenure of office . . . ." *Naumann*, 73 Mich at 254.   In the context of a post-election contest, these concerns make sense, as judicial review of an election leaves the legislative body in limbo.   However, in the context of a pre-election challenge, judicial review can have the opposite effect, avoiding post-election challenges to an official who was ineligible to have his or her name included on the ballot in the first place.   We conclude, therefore, that § 4.2 does not apply to a pre-election challenge.   As a result, plaintiff was not required under § 4.2 to present his challenge to the Warren City Council.

---

[3] When interpreting charter provisions we apply the same principles applicable to other legal texts.   See *Barrow v City of Detroit Election Comm*, 305 Mich App 649, 663 (2014) ("When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes.   The provisions are to be read in context, with the plain and ordinary meaning given to every word.   Judicial construction is not permitted when the language is clear and unambiguous.   Courts apply unambiguous statutes as written.") (quotation marks and citation omitted).

For the reasons articulated by the Court of Appeals dissent, we conclude that the city elections commission had a clear legal duty to perform the ministerial act of removing the names of the challenged contestants from the ballots. See *Barrow v City of Detroit Election Comm*, 301 Mich App 404, 412-413 (2013). Accordingly, we REINSTATE the Macomb Circuit Court's ruling, which correctly granted the requested mandamus relief.

MARKMAN, J. (*concurring*).

I concur in the result reached by the majority-- that the judgment of the Court of Appeals be reversed and the Macomb Circuit Court's grant of plaintiff's requested mandamus relief be reinstated. But as observed by the Court of Appeals dissent, I believe it is only necessary that this Court address the issue of relief in the pre-election context because the proposition that "the Charter makes the council the sole and exclusive judge of the qualifications of its members, is inapplicable" in the present pre-election context. *Berdy v Buffa*, ___ Mich App ___, ___ (2019) (Docket No. 349171) (TUKEL, P.J., dissenting); slip op at 6 n 3. Furthermore, I am in agreement with the analysis of the Court of Appeals dissent that plaintiff is entitled to mandamus relief, in particular its analysis that the Warren Charter provides for a single class of city council members subject to the term limits of three terms in office or a total of 12 years' service. And it is not disputed that the challenged candidates here will have served those limits by the time of the 2019 election and thus are ineligible under the Warren Charter, §§ 4.3(d) and 4.4 (d).

ZAHRA, J., joins the statement of MARKMAN, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 11, 2019



Clerk

s0611