*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WARREN CITY COUNCIL,

        Plaintiff-Appellant,

and

RONALD J. PAPANDREA,

        Plaintiff,

v

SONJA BUFFA in her capacity as WARREN
ELECTION COMMISSIONER, WARREN CITY
CLERK, and CITY OF WARREN ELECTION
COMMISSION,

        Defendants-Appellees,

and

ANTHONY FORLINI in his capacity of MACOMB
COUNTY CLERK,

        Defendant.

FOR PUBLICATION
April 21, 2023
9:00 a.m.

No. 365488
Macomb Circuit Court
LC No. 2023-000611-AW

Before: CAVANAGH, P.J., GLEICHER, C.J., and O'BRIEN, J.

PER CURIAM.

Plaintiff Warren City Council ("the Council") appeals by right the circuit court's order denying its complaint for writ of mandamus and granting summary disposition to defendants in this election matter.[1] This case concerns the effect of a 2020 amendment to the Warren City

---

[1] As this is an election matter to which we give priority consideration, this Court expedited this appeal. *Warren City Council v Buffa,* unpublished order of the Court of Appeals, issued April 6, 2023 (Docket No. 365488).

-1-

Charter to change the mayor's term to the same term limits of other elected city officials. The specific issue presented is whether the Mayor of Warren, James Fouts, whose fourth and current term expires in November 2023, is eligible to run for a fifth term in office in light of the voters' approval of a 2020 charter amendment limiting mayors to the greater of three terms or 12 years. Because we conclude that the Council has shown that it is entitled to a writ of mandamus, we reverse.

## I. BACKGROUND

The City of Warren is a home rule city with a charter approved in accordance with the Home Rule City Act (HRCA), MCL 117.1 *et seq*. When the Warren City Charter was established in 1956, it did not contain term limits for city officials, but in 1998, the Council determined that term limits would promote the public interest. The Council submitted a proposed ballot question to amend the charter to provide that city officers, including the mayor, council members, clerk, and treasurer, could not hold office for the greater of three terms or 12 years in a particular office. To restrict the number of prior terms that would be counted to one, the ballot proposal provided that the limitation would begin with the term related to the election that had occurred in November 1995. The resolution passed, and the city charter was duly amended. In addition to establishing the new term limits, the charter amendment indicated that the new provisions would be applied to commence with the term of office that took effect after the November 7, 1995 election.

In 2010, Warren voters amended the charter to reduce the number of council members from nine to seven, and to create new districts for five members of the Council. Confusion arose regarding term limits, where some council members were at-large members and others were by-district members. The Warren City Attorney opined that the voters had created two separate and distinct legislative groups, thereby creating a "bicameral" Legislature. Thus, the charter permitted at-large council members to exhaust their term limits under the at-large council office, and then to run for a by-district council office, and vice versa. In line with that opinion, the Warren City Clerk in 2015 permitted candidates for the Council to appear on the ballot although they had served more than 12 years on the Council. A candidate for the Council sought mandamus, which the circuit court denied, and this Court denied the resulting application.[2]

The Council proposed in 2016 that the voters should choose whether to extend the term limits for mayor from three terms or 12 years to five terms or 20 years. The ballot proposal indicated that any years or terms served prior to the amendment would be included. The measure passed, and the charter was amended.

In 2019, a resident of Warren sought to bar four city council candidates from appearing on the primary ballot on the basis of the term limits provision. In contrast to the city attorney's 2014 opinion, the circuit court ruled that the charter's term-limits definition did not distinguish between at-large council members and by-district council members, such that the four candidates were not eligible for the primary ballot. On appeal, this Court reversed, ruling in part that reasonable minds could disagree on whether a distinction existed in terms served by council members elected by-

---

[2] *Olejniczak v Warren Elections Comm'n,* unpublished order of the Court of Appeals, issued June 11, 2015 (Docket No. 327779).

district and at-large. *Berdy v Buffa,* 328 Mich App 550, 556-558; 938 NW2d 789 (2019). The dissenting judge opined in part that the majority's interpretation of the charter was contrary to the plain language as there were no differences in the powers or authorities of council members. *Id.* at 562-569. Our Supreme Court cited the dissent and reversed. It ruled that the charter provided for only one class of council members; thus, the four challenged candidates were ineligible under the charter to be certified because it was not disputed that they would have served the maximum terms by the time of the 2019 election. *Berdy v Buffa,* 504 Mich 876; 928 NW2d 204 (2019).

In 2020, the Council resolved to submit a ballot question to the voters to amend the charter to limit the mayor's term in line with other elected city officials (the greater of three terms or 12 years), noting that a governmental system with a balanced distribution of power would be served best by equal term limits for all elected officials. The proposed ballot language indicated that any years or terms served prior to the amendment would be included.

Mayor Fouts vetoed that resolution, but the Council voted unanimously to override his veto. Although defendant Buffa initially refused to certify the ballot language, this Court ultimately directed that she do so.[3]

The following question appeared on the 2020 ballot in Warren:

CITY CHARTER AMENDMENT

A PROPOSAL TO REQUIRE THE OFFICE OF MAYOR TO HAVE THE
SAME TERM LIMITS AS THE OTHER CITY ELECTED OFFICES

The proposed amendment would require all city elected offices to have the same term limits of three (3) terms or twelve (12) years. Currently the office of mayor has a limit of five (5) terms or twenty (20) years and the offices of city council, clerk, and treasurer have a limit of (3) three terms or twelve (12) years. Any terms or years served prior to this amendment are included.

PROPOSAL: Should the office of mayor have the same term limits as the other city elected offices, which is the greater of three (3) complete terms or twelve (12) years?

YES___

NO____

The voters passed the measure 67.8% to 32.2%, and the charter was amended to provide as follows:

Sec. 4.3—Certain persons ineligible for city office.

---

[3] See *Warren City Council v Buffa,* 333 Mich App 422; 960 NW2d 166 (2020).

(d) A person shall not be eligible to hold the office of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

Sec. 4.4—Terms of office.

(d) A person shall not be eligible to hold the office of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that particular office. [PX Vol I, Charter, 0024a-0026a.][4]

Mayor Fouts won his first term in 2007 and he was reelected in 2011, 2015, and 2019. When the voters passed the 2020 proposal to amend the charter, Mayor Fouts was serving his fourth term in office.

Upon request, the city attorney offered his opinion on whether Mayor Fouts was eligible to seek a fifth term as mayor, and he opined that Mayor Fouts was eligible. He believed the retroactive effect of the proposal was unclear and that voters may not have understood the proposal. The Election Commission thereafter voted to accept the opinion of the city attorney regarding Mayor Fouts' eligibility to appear on the 2023 ballot.

The Council filed the instant action seeking a writ of mandamus and declaratory relief.[5] While admitting that the mayoral term limits amendment adopted in November 2020 could not be applied to shorten Mayor Fouts' fourth and current term of office, the Council opined that under

---

[4] Before the 2020 amendment, those provisions of the charter provided:

Sec. 4.3—Certain persons ineligible for city office.

(d) A person shall not be eligible to hold the office of mayor for more than the greater of five (5) complete terms or twenty (20) years. A person shall not be eligible to hold the position of city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

Sec. 4.4—Terms of office.

(d) A person shall not be eligible to hold the office of mayor for more than the greater of five (5) complete terms or twenty (20) years. A person shall not be eligible to hold the position of city council. city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that particular office.

[5] Ronald J. Papandrea, a current member of the Council, also filed suit, seeking a declaration regarding whether Mayor Fouts could run again. *Papandrea v Warren City Election Comm'n*, MCCC Docket No. 2023-000493-AW. The court consolidated Papandrea's case with the Council's case for all purposes and closed Papandrea's case.

the plain language of §§ 4.3(d) and 4.4(d), Mayor Fouts was ineligible to run for a fifth term in 2023. The Council contended that the language of the charter amendment was clear and unambiguous and defendants had a duty to strictly comply by deeming Mayor Fouts ineligible. Defendants answered that they had accepted Mayor Fouts' reelection papers and denied that Warren's electors were not entitled to vote for him in the November 2023 election.

The parties then filed competing motions for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). In its motion, the Council argued that all terms and years served prior to 2020 are to be counted in determining eligibility given the unambiguous language of the ballot proposal and the charter, as well as the prospective application of the term limits. The Council contended that it had demonstrated all elements necessary for mandamus. Defendants stated that the 2020 amendment was ambiguous because it did not specify how terms of office served before that amendment were to be counted. Defendants also challenged the Council's standing to assert its claims. They maintained that legislation generally is to be given only prospective effect unless clearly indicated, and here, a clear directive of retroactivity was absent. They asserted that mandamus was inappropriate because there was no clear legal duty to restrict Mayor Fouts from appearing on the ballot.

The circuit court ruled that the Council had standing to argue that the charter barred Mayor Fouts from reelection.[6] The court expressed two concerns regarding the 2020 amendment. First, that the language "any terms or years served prior to this amendment are included" was not included in the proposal question on the ballot or in the charter. Second, that there was a discrepancy on the ballot between the explanatory portion's statement that that the amended term limits would be "three (3) terms or twelve (12) years" and the proposal question's statement that the amended term limits would be "the greater of three (3) complete terms or twelve (12) years." The court stated that the failure to include the "terms served prior" language was especially troubling because the Council had included similar language in the 1998 proposal.

The court then discussed retroactivity, and observed that the charter language reflected no clearly manifested intent for term limits to include prior terms served. Although Mayor Fouts did not have a vested interest, the Council's interpretation would attach a new disability with respect to past considerations, as it would prevent Mayor Fouts from running on the basis of his prior terms served. The court then concluded that, if the ballot amendment was intended to address both term limits and the impact of prior terms served on those term limits, then it would violate the portion of the HRCA that indicates a proposed charter amendment should be confined to a single subject, MCL 117.21(3). The court concluded that the Council had not established the "clear legal right" element of a mandamus action. The court decided that the ballot language and charter were unclear on whether previous terms served are counted toward the current term limits and denied mandamus and granted summary disposition to defendants.

---

[6] Although the issue of standing has not been challenged on appeal, we express our agreement with the circuit court that the Council has standing to bring this action.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition in a declaratory relief action. *League of Women Voters of Michigan v Sec'y of State*, 339 Mich App 257, 272; 981 NW2d 538 (2021). But the court's grant or denial of declaratory relief is subject to an abuse of discretion standard of review. *Reed-Pratt v Detroit City Clerk*, 339 Mich App 510, 516; 984 NW2d 794 (2021).

We review for an abuse of discretion a trial court's decision regarding a writ of mandamus. *Citizens Protecting Michigan's Constitution v Sec'y of State*, 503 Mich 42, 59; 921 NW2d 247 (2018). However, whether a plaintiff has a clear legal right, and a defendant has a clear legal duty to perform, are questions of law subject to de novo review. *Berry v Garrett*, 316 Mich App 37, 41; 890 NW2d 882 (2016) (citation omitted).

The interpretation of a municipal charter presents a question of law that we review de novo. *Warren City Council v Fouts*, __ Mich App __; __ NW2d __ (Docket No. 361288, issued December 29, 2022), slip op at 6.

## III. ANALYSIS

As recognized by defendants, this lawsuit is just the latest installment of litigation between the Council and Mayor Fouts. Both sides accuse the other of failing to respect the will of the voters. Defendants maintain that the Council is showing a basic lack of respect for the voters by arguing they should not have the option of electing Mayor Fouts to a fifth term. The Council rejoins that defendants are not upholding the will of the voters who voted in 2020 to preclude any mayor from serving more than three terms. Political differences aside, our legal analysis begins with reliance on the plain language of the charter.

### A. THE PLAIN LANGUAGE OF THE CHARTER

We review de novo as a question of law the interpretation of a statute or a municipal charter. *Hackel v Macomb Co Comm'n*, 298 Mich App 311, 316; 826 NW2d 753 (2012). This Court previously has articulated the following rules for charter interpretation:

> When reviewing the provisions of a home rule city charter, we apply the same rules that we apply to the construction of statutes. The provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear and unambiguous. Courts apply unambiguous statutes as written. [*Barrow v Detroit Election Comm'n* (*Barrow I*), 301 Mich App 404, 413–414, 836 NW2d 498 (2013) (citations omitted).]

Importantly, we "may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Bay City v Bay Co Treasurer*, 292 Mich App 156, 166–167, 807 NW2d 892 (2011) (quotation marks and citation omitted). We also are mindful that "the primary goal is to discern and give effect to the legislative intent that may reasonably be inferred from the language of the [charter]." *AFSCME Local 25 v Wayne Co,* 297 Mich App 489, 497; 824 NW2d 271 (2012) (citation omitted).

Again, the charter provisions at issue provide:

Sec. 4.3—Certain persons ineligible for city office.

(d) A person shall not be eligible to hold the office of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that office.

Sec. 4.4—Terms of office.

(d) A person shall not be eligible to hold the office of mayor, city council, city clerk or city treasurer for more than the greater of three (3) complete terms or twelve (12) years in that particular office.

The circuit court identified that language as ambiguous. Language is ambiguous if it is vulnerable to "more than one reasonable interpretation." *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 450; 980 NW2d 119 (2021) (citation omitted). Stated differently, ambiguity arises where language is "equally susceptible to more than one meaning." *Detroit Media Group, LLC v Detroit Bd of Zoning Appeals*, 339 Mich App 38, 51; 981 NW2d 88 (2021), (citation, quotation marks, and punctuation omitted).

The plain language of the charter provides that a person who has held the office of mayor for more than three terms or 12 years "shall not be eligible" to hold it any longer. The term "shall" is a mandatory term. *James Twp v Rice*, 509 Mich 363, 372 n 14; 984 NW2d 71 (2022). Thus, the one reasonable interpretation of the charter language is that once a person has served three terms or 12 years, that person is not eligible to serve again as mayor. Nothing in the plain language of the amendment provides that a person shall be eligible to hold the office of mayor for more than three terms or 12 years in that office. Unlike the 1998 amendment, which limited the number of prior terms to those after 1995, the 2020 amendment does not contain such limiting language. Therefore, all prior terms are to be counted.

Defendants interpret the charter language to mean that Mayor Fouts' prior terms are *not* counted because the charter does not expressly state that terms served prior *are* counted. We decline defendants' invitation to find that the charter language is equally susceptible to that meaning. The fundamental tenet of term limits is that prior terms are considered and future terms are limited based upon those prior terms. The "default" therefore is that prior terms are counted. Given that, defendants' position that their interpretation is reasonable does not withstand scrutiny.

This conclusion finds support in the 1998 charter language, which specified that the provision commenced with the term of office that had begun three years before the amendment. In 1998, the Council intended to reduce the applicable prior terms to one prior term only. If the Council had not included that limiting language, any prior terms would have counted.[7] The 2016

---

[7] Therefore, we reject the circuit court's declaration that the omission was "especially troubling." In 1998, the Council expressed its intent that only one prior term was to be considered. In 2020, the Council indicated no such intent, so there was no reason to include the limiting language.

charter amendment language did not contain the directive that any terms served prior would be included. Although the 2016 ballot proposal reflected the "terms served prior" language, it was wholly unnecessary in the charter because there was no intent to limit the number of terms counted; thus, all prior terms counted. The same is true here. The amended charter provisions §§ 4.3(d) and 4.4(d) do not include the "terms served prior" language as it was unnecessary, there being no intent to limit the number of prior terms counted.

It follows that the charter language is unambiguous and therefore it controls. See *Wayne Co*, 267 Mich App at 243 (ruling that the unambiguous language of a charter provision controls). Consequently, where Mayor Fouts is a person who has held the office of mayor for more than three terms, he is not eligible to hold the office of mayor again in Warren and should not be permitted to run for reelection for another term.

Defendants and the circuit court voiced concern that the voters in 2020 were confused by the language of the ballot proposal. Notwithstanding, "[t]he framers of the charter and the people who voted to adopt it, 'must be presumed to have intended that the provision be construed as it reads.'" *Hackel*, 298 Mich App at 318 (citing *Woods v Bd of Trustees of the Policemen & Firemen Retirement Sys of Detroit*, 108 Mich App 38, 43; 310 NW2d 39 (1981)). We therefore presume that the Council and the citizens of Warren who voted to adopt the amendment in 2020—limiting the mayor to three terms, in line with the other elected city officers—intended the results of the plain language of the amendment. Thus, going forward after passage of the 2020 ballot proposal, a person shall not be eligible to hold the office of mayor, city council, city clerk, or city treasurer in Warren for more than the greater of three (3) complete terms or twelve (12) years in that particular office. The circuit court's interpretation impermissibly presupposes that the voters did not understand that clear language.

We reject the circuit court's view for another reason: if the amendment does not apply to Mayor Fouts now, it would mean that he could be permitted to serve another three terms, for a total of seven terms. That result is not in harmony with the plain language of the charter, nor it is even consistent with the 2016 version of the charter that limited the mayor to five terms. Courts should avoid constructions that give rise to absurd results. *Empire Iron Mining Partnership v Tilden Twp*, 337 Mich App 579, 594; 977 NW2d 128 (2021).

Here, it is not disputed that Mayor Fouts has served the maximum three terms or 12 years. He therefore is ineligible to be certified as a candidate for mayor in light of the clear charter language. See *Berdy*, 504 Mich at 876.

Our final point regarding the charter amendment language is that it addresses its single purpose: to establish that candidates for the office of mayor are subject to the same term limits as other elected city officers, the greater of three terms or 12 years. Given that focused purpose, the circuit court incorrectly opined that the amendment would violate the HRCA's requirement that amendments be confined to one subject in MCL 117.21(3).

B. THE BALLOT PROPOSAL

The circuit court also relied on the language of the ballot proposal in for its decision. We need not focus on the ballot proposal language in light of the clear words in the charter. See *WPW*

*Acquisition Co v City of Troy*, 250 Mich App 287, 318 n 15; 646 NW2d 487 (2002), (commenting that reliance on ballot language to discern the electorate's common understanding is inappropriate, where intent may be understood from the language of the resulting statutory provision itself).

Even if the ballot proposal language is considered, however, it supports the Council's position.[8] The ballot proposal clearly indicated that "[a]ny terms or years served prior to this amendment are included."[9] The circuit court seemed to believe, without citing any legal authority, that the proposal question itself must have indicated that any terms served prior would be counted. But the "terms served prior" language at issue appeared underneath the heading: "***A PROPOSAL*** TO REQUIRE THE OFFICE OF MAYOR TO HAVE THE SAME TERM LIMITS AS THE OTHER CITY ELECTED OFFICES" (emphasis supplied). The "terms served prior" language undisputedly was on the ballot, and was included in the text underneath the "proposal" heading.

Admittedly, the "terms served prior" language did not appear in the proposal question itself. But the voters were provided with the entirety of the proposal section on the ballot, not only the proposal question, and we are unaware of any legal authority providing that courts may discount ballot language that is not in the proposal question. When the entire proposal language on the ballot is considered, the voters were informed that all prior terms would be included. Therefore, the circuit court's interpretation essentially nullifies the "terms served prior" language that *actually was on the ballot*. When construing a statute (or a charter), courts are to give meaning to every word to avoid an interpretation that would "render any part surplusage or nugatory." *Christenson v Sec'y of State*, 336 Mich App 411, 420; 970 NW2d 417 (2021) (citation omitted). By analogy, that same principle would apply here when considering the language of the ballot proposal.

Defendants additionally argue that, because the "terms served prior" language was in the explanatory section, it is akin to a statutory preamble, which is not to be considered authority for construction purposes. See *Malcolm v City of East Detroit*, 437 Mich 132, 143, 468 NW2d 479 (1991). We are not convinced that the explanatory section of a ballot proposal can be equated with a statutory preamble, which is not part of the act, particularly where the 2020 ballot contained both the proposal question and the "terms served prior" under the headings "CITY CHARTER AMENDMENT" and "A PROPOSAL." Second, "[t]he preamble may be employed to extend the meaning of an ambiguous statute beyond the limited language of the purview. This rule must be qualified by the explanation that the result must be consistent with other rules of interpretation." *King v Ford Motor Credit Co*, 257 Mich App 303, 312; 668 NW2d 357 (2003) (citation omitted). Third, the preamble may be useful for interpreting a statute's purpose and scope. *Malcolm*, 437 Mich at 143. It follows that, to the extent that the charter's failure to specify that any prior terms would be counted rendered the charter ambiguous, the ballot "preamble" language supports the

_____

[8] We note in passing that we are not persuaded by the Council's reliance on the approval of the ballot language by the governor and the attorney general after it was submitted to the governor pursuant to MCL 117.21. The issue posed in this appeal was not before the attorney general or the governor when they approved the ballot language.

[9] Accordingly, defendants are incorrect in stating that the Council "remove[d] from its 2020 Proposal the specific language that had been included in both the 1998 and 2016 proposals . . . ."

charter amendment's purpose to count any terms served prior in determining eligibility to hold office.

We also consider that the same language appeared on the 2016 ballot and did not appear in the proposal question itself. The language "[a]ny terms or years served prior to this amendment are included" appeared *after* the question in 2016 rather than *before* the question, as in 2020. In their appellee brief, defendants admitted that the 2016 language "made crystal clear to voters how prior years and terms would be counted in the resulting amendment." The same language appeared here, directly before the question, rather than directly after. We cannot conclude that the relocation of that sentence made it any less "crystal clear" to voters regarding terms served prior.

The ballot language was not challenged as unclear in 2020. A majority of the voters passed the measure in 2020. Defendants' arguments do not compel us to ignore that result on the basis of the placement of the sentence regarding prior terms.

Accordingly, we hold that the charter language is clear and precludes Mayor Fouts from being eligible to run as mayor because he already has served three terms. The ballot language also supports that any terms served prior to the 2023 election are appropriately counted.

## C. RETROACTIVITY

An additional basis for the circuit court's denial of mandamus was that the 2020 amendment was not retroactive. We agree that the 2020 amendment does not have retroactive application, but we diverge from the circuit court's conclusion that a prospective application would exempt the consideration of Mayor Fouts' prior terms as mayor.

Generally, legislation is applied prospectively, unless the Legislature indicates an intent to make it apply retroactively. *Breiner v State*, __ Mich App __; __ NW2d __ (Docket No. 356501, issued December 1, 2022), slip op at 11 (citation and quotation marks omitted). Retroactive application is disfavored where it "would impair vested rights, create a new obligation and impose a new duty, or attach a disability with respect to past transactions." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). Retroactive application may result in unfairness by potentially depriving citizens of legitimate expectations or upsetting settled transactions. *Wells Fargo Bank, NA v Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 380; 835 NW2d 593 (2013) (citation omitted). A statute therefore may be applied retroactively when it "will not deny vested rights." *Proctor v Saginaw Co Bd of Comm'rs*, 340 Mich App 1, 25 n 13; 985 NW2d 193 (2022) (citation and quotation marks omitted).

It is undisputed that Mayor Fouts does not have a vested right to be elected as mayor in 2023. The circuit court contended that the counting of prior terms would be a new disability, but that argument fails, both because there is no vested right to holding office, and because the consistent aim of the term limits in Warren is that all elected city officers be subject to the same term limits.

Instructive to our analysis is *LaFontaine Saline, Inc v Chrysler Group, LLC*, 496 Mich 26; 852 NW2d 78 (2014), where our Supreme Court set forth the following factors for inquiries into legislative intent regarding retroactivity:

First, we consider whether there is specific language providing for retroactive application. Second, in some situations, a statute is not regarded as operating retroactively merely because it relates to an antecedent event. Third, in determining retroactivity, we must keep in mind that retroactive laws impair vested rights acquired under existing laws or create new obligations or duties with respect to transactions or considerations already past. Finally, a remedial or procedural act not affecting vested rights may be given retroactive effect where the injury or claim is antecedent to the enactment of the statute. [*Id*. at 38-39 (citations omitted).]

The first *LaFontaine* factor considers specific language providing for retroactive application. The 2020 charter amendment does not contain a legislative statement of retroactive application. Without a retroactivity reference, it may be concluded that prospective application is appropriate. *Andary v USAA Casualty Ins Co*, __ Mich App __; __ NW2d __ (Docket No. 356487, issued August 25, 2022), slip op at 4.

The second and fourth factors discuss antecedent events. Our Supreme Court addressed antecedent events in *Hughes v Judges' Retirement Bd,* 407 Mich 75, 85; 282 NW2d 160 (1979), and commented that the fact that a statute relates to antecedent events does not mean that it has retroactive effect. "Merely because some of the requisites for its application are drawn from a time antedating its passage does not constitute a law retrospective." *Id.* at 86 (citing *Clearwater Twp v Bd of Supervisors of Kalkaska Co*, 187 Mich 516; 153 NW 824 (1915)). Some of the requisites for the 2020 amendment—the serving of prior terms—occurred before the amendment was passed. But under *Hughes*, that does not necessarily make the amendment retroactive.

In *Hughes*, two judges, who had retired before the passage of amendments to increase pension benefits, argued that they should benefit from the increase going forward. In deciding that the judges could benefit, our Supreme Court observed in part that "[i]t is unthinkable that only those judges who served 12 or more years after the effective date of the 1974 amendment would be entitled to the benefits provided thereunder." *Hughes*, 407 Mich at 86. The Court decided that providing benefits to those judges who possessed a continuing status, although part of the requirements were fulfilled before the amendment's passage, did not disturb the rule barring retrospective application. *Id.* The Court also decided that the plaintiffs sought only prospective application of the amendment for their benefits going forward. *Id.*

As in *Hughes*, the Council here seeks only prospective application of the amendment. It did not retroactively seek to disrupt Mayor Fouts' fourth term in office after the 2019 election once the amendment passed in 2020. Rather, the Council now seeks a declaration that Mayor Fouts is subject to the version of the charter in effect in 2023, on the basis of term limits amendment passed in 2020, for the election that will occur later this year. Prospectively, the terms served before the amendment's passage will be counted. Thus, the amendment need not be applied retrospectively to afford the Council relief.

## D. RELIEF

Turning now to the specific allegations in the complaint, the Council seeks declaratory relief. "The purpose of a declaratory judgment is to definitively declare the parties' rights and duties, to guide their future conduct and relations, and to preserve their legal rights." *Barrow v*

*Detroit Election Comm'n* (*Barrow II*), 305 Mich App 649, 662; 854 NW2d 489 (2014). As explained above, the Council has cited legal authority to support its position that Mayor Fouts is ineligible to run for reelection.

The Council also sought mandamus, which is an extraordinary remedy. *Citizens Protecting Michigan's Constitution v Sec'y of State,* 324 Mich App 561, 584; 922 NW2d 404 (2018) (citation and quotation marks omitted). Whether a writ issues is within the discretion of the court. *Moore v Genesee Co*, 337 Mich App 723, 731; 976 NW2d 921 (2021). Specifically, the plaintiff has the burden to show:

> (1) a clear legal right to the act sought to be compelled; (2) a clear legal duty by the defendant to perform the act; (3) that the act is ministerial, leaving nothing to the judgment or discretion of the defendant; and (4) that no other adequate remedy exists. [*Twp of Casco v Sec'y of State*, 472 Mich 566, 621; 701 NW2d 102 (2005) (YOUNG, J., concurring in part).]

In a mandamus action, "a 'clear, legal right' is one clearly founded in, or granted by, law; a right which is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Taxpayers for Michigan Constitutional Government v Dep't of Technology, Mgmt, & Budget (On Remand),* __ Mich App __; __ NW2d __ (Docket No. 334663, issued December 22, 2022), slip op at 9 (citation omitted). As the legislative body for the City of Warren, the Council has a clear legal right to the proper application of charter provisions. Further, if a person is not qualified to be a candidate, "plaintiff would have a clear legal right" to have the person's name removed from the list of candidates. *Barrow I*, 301 Mich App at 412.

Mandamus relates to the duties of public officials. *Vayda v County of Lake*, 321 Mich App 686, 700; 909 NW2d 874 (2017). A clear legal duty is asserted to compel the enforcement of an act by a public official. *Teasel v Dep't of Mental Health*, 419 Mich 390, 415 n 13; 355 NW2d 75 (1984). Defendants have the clear legal duty to comply with the charter and, given Mayor Fouts' prior terms of service, defendants have a clear legal duty *not* to certify him as a candidate.

"A ministerial act is one in which the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Taxpayers for Michigan Constitutional Government v Dep't of Technology, Mgmt, & Budget*, 508 Mich 48, 82; 972 NW2d 738 (2021) (quotation marks and citation omitted). The duty is ministerial as defendants are required to follow the charter provisions regarding eligibility. There is no dispute that Mayor Fouts has served more than three terms or 12 years; therefore, defendants do not have discretion to determine that he is eligible to run for the office of mayor. The city elections commissioner accordingly has a clear legal duty to perform the ministerial act of removing Mayor Fouts' name from the ballots. See *Berdy,* 504 Mich at 207.

Finally, mandamus generally is a proper remedy to compel election-related duties. *Warren City Council v Buffa*, 333 Mich App 422, 435; 960 NW2d 166 (2020). Also, under the HRCA, "[a] person aggrieved by an action, or failure of action, of the city clerk may bring an action against the clerk in the circuit court for writ of mandamus or other appropriate relief." MCL 117.25(7). The Council's mandamus action hence was proper.

Consequently, the materials before this Court reflect that the Council has shown that it has a clear legal right to the correct application of the charter language, that the city election defendants have a clear legal duty to not certify Mayor Fouts for the ballot, that the duty is ministerial, and that mandamus is the proper remedy. The circuit court therefore abused its discretion in denying the Council's requested writ of mandamus precluding defendants from certifying Mayor Fouts as a candidate.

## IV. CONCLUSION

We conclude that the relevant charter sections' failure to specify that time in office before the 2020 amendment will be counted does not make them ambiguous. Nor do we find dispositive the fact that the "terms served prior" language was not in the ballot proposal question itself, where the language actually was on the ballot within the proposal section. Additionally, a prospective application of the charter is applied here, and its reliance on antecedent events does not run afoul of the general rule against retroactivity. Accordingly, for the reasons stated, we reverse the circuit court's grant of summary disposition to defendants, and grant the Council's complaint for writ of mandamus. Buffa is hereby ordered to immediately disqualify Mayor Fouts as a candidate for mayor in 2023 and not place his name on the ballot for election. A public question being involved, no costs may be taxed under MCR 7.219. This opinion shall have immediate effect pursuant to MCR 7.215(F)(2).

/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien